## HAVEMEYER *v.* IOWA COUNTY.

1. The case of *Gelpcke* v. *The City of Dubuque* (1 Wallace, 175), affirmed and enforced; and the doctrine reasserted, that if a contract, when made, was valid by the constitution and laws of a State, as then expounded by the highest authorities whose duty it was to administer them, no subsequent action by the legislature or judiciary can impair its obligation.

2. Where the judges of the Circuit Court certify a division of opinion to this court for its judgment, this court will not return an answer unless the question raised involve a distinct legal point, and sufficient facts are set forth to show its bearing on the rights of the parties. Hence no answer will be given to a proposition merely abstract.

THE constitution of Wisconsin, adopted in 1848, provides that "*no general law shall be in force until published;*" and an act of 1852 makes it the *duty* of the secretary of state and the *attorney-general* to divide all the laws passed by the legislature into two classes, and directs that each class shall be published in a separate volume; that the first class shall include laws of a *general nature;* the second class all laws which are not included in the first class; and that "the title-pages of the respective volumes shall express whether they contain acts of a *general nature* or the *private and local* acts," &c.

*Subsequently* to the passage of this act of 1852—that is to say, in *March,* 1853—the legislature of Wisconsin passed an act authorizing counties through which a certain railroad should pass—Iowa County being one of the counties—to aid its construction by subscribing to its stock and issuing bonds of the county to pay for it. But by the terms of the act, no bonds were to be issued except a majority of the electors should authorize the issue by vote at an election, the mode of holding which and the duties of the county officers in regard thereto were prescribed in the statute.

This act of *March,* 1853, coming, soon after its passage and in ordinary course, before the secretary of state and attorney-general for classification, they decided that it was not an act of a general nature, but was a local act, and classified it accordingly. *No volume containing the act was published till October,* 1853.

Between these two dates—and between the time, of course, when the secretary of state and the attorney-general classified the act as a local act, and the time when the act was "published" in a volume—the election, which the act itself authorized, was held, and the bonds were issued by the county. A number of them passed into the possession of one Havemeyer, and the interest on them being unpaid, he now brought debt in the Circuit Court of Wisconsin to obtain payment of it.

On the trial, the judges of the Circuit Court were divided in opinion, and sent here a certificate of division accordingly, on the following questions:

1. Whether the act of March, 1853, authorizing the subscription, and under which the bonds were issued, is a " general law" within the meaning of the constitution of Wisconsin?

2. Whether the said act, not being published as a general act, and having been first published, after its passage, in the volume of local and private acts, in October, 1853, and *after* the issuing of the bonds, is not such an exercise of power by the State government or legislature, showing that the act is not a general act, and is binding on the courts?

3. Whether, if the said act is such a general law, *any* act or omission of the said county, its officers or electors, short of an election under the act, after the act was published in October, 1853, will render the bonds valid, or estop the defendant from questioning their validity in the hands of *bonâ fide* holders?

The case came here, of course, under the act of Congress of 29th April, 1802, which authorizes a decision of *this* court upon it, " whenever any question shall *occur* before a Circuit Court upon which the opinions of the judges shall be opposed," and a certificate of it is sent up.

There were no recitals on the bonds, and the record disclosed no great deal more than the act authorizing the election, subscription, issue, and the fact that these had all been made, and that Havemeyer was owner of the instruments now due and unpaid.

The difficulty of resolving the question below was caused

in part, perhaps, from a conflict in the decisions in the Supreme Court of Wisconsin, as to the character of the act of March, 1853, or of others just like it. The late decisions of that tribunal, beginning with *State* v. *Leon*, A.D. 1859,\* followed by several others afterwards,† held the acts to be general laws; herein departing from the view taken, A. D. 1858, in *Hewett* v. *The Town of Grand Chute*,‡ where a contrary idea was assumed as of course. And how far this departure from precedent was owing to a truer conception of the nature of general and particular laws, and how far to the fact, that the judiciary of Wisconsin was a body elected by popular suffrage at short intervals, and which might have come to the bench suffused with the feelings and ideas and wishes of a constituency wishing to disown an obligation which it had been found much easier to contract than to pay, was a matter not seen perfectly alike by all sides.

*Mr. M. H. Carpenter, for Havemeyer, holder of the bonds.*

The first and second points may be argued together. The act authorizing the subscription is not a general law, and does not require to be published in order to be valid. The distinction was long since truly taken by an authoritative writer of the English law,—a no less authority than Chief Baron Gilbert. Under the title of " General and Particular Laws," he says in his book on evidence:

" The distinction between a general and a particular law is, whatever concerns the kingdom in general, is a general law; and whatever concerns a particular species of men, or some individuals, is a special law."

It is impossible to cite higher authority, though here found in a text-book, and unnecessary, therefore, to cite

---

\* 9 Wisconsin, 279.

† Subsequent decisions are as follow : In re Boyle, 9 Wisconsin, 265, decided A.D. 1859; Clark *v.* City of Janesville, 10 Id. 136, decided A.D. 1860; Town of Rochester *v.* The Alfred Bank, 13 Id. 432, A. D. 1861 ; Berliner *v.* Town of Waterloo, 14 Id. 378, A.D. 1861.

‡ 7 Wisconsin, 282.

other.   The same distinction, however, it may be said, runs through all judicial decisions.   It has been declared in Wisconsin itself, and nowhere more emphatically.   In *Hewett* v. *The Town of Grand Chute*, decided in 1858, long after these bonds had been sold, the question was not even thought of being raised.   The action was on bonds issued, by the town, in pursuance of an act almost identical with this one.   The question was, whether, *being* a private act, the act was properly pleaded?   That it *was* a private act, no one was hardy enough to deny.   The difficulty of the case would have disappeared had the act been a public one.   The Supreme Court of Wisconsin say, and this court will specially note their language:

" The cause of action is founded upon a *private statute;* or rather upon certain instruments or contracts in writing, which derive their validity from such *private statute.*   By the common law it was necessary to set out such statute in the declaration, otherwise the court would not take notice of its provisions: *unlike*, in this respect, a *public statute*, of which the court was bound to take judicial notice, though the latter were not pleaded. But section sixty-nine of the Code of Procedure provides as follows : ' In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its *title* and the day of its passage, and the court shall thereupon take judicial notice thereof.'   In this case the plaintiff in his complaint did refer to the statute from which his right was derived, by reference to its title and the day of its passage, and he thus brought the whole statute within the judicial knowledge of the court," &c.

This view—a unanimous one of the old Supreme Court of Wisconsin—the view also taken previous to it by the secretary of state and the attorney-general—remained unquestioned and without doubt as to its being true law, until 1859, when the tax-payers woke up to the truth that it is easy to contract debt, but not always easy to pay it, and a majority of our Supreme Court,—three judges elected by the people—discovered in *State* v. *Leon*, the saving fact that such statutes are of a " general nature;" declaring a few years

later* that an election before the publication authorizing the issue, was "an idle act, wholly unauthorized and of no importance whatever." This departure from precedent, is the consequence of a judicial tenure for less than good behavior; a bench of justice elected as that in Wisconsin, at short terms, by general suffrage.

But it is our privilege to come to this tribunal, where the "*arbitrium popularis auræ*" is unknown, and which neither takes up nor lays down the scales of justice at its command. To this court, then,—this "more than Amphyctionic council,"—we appeal. We rely upon the important doctrine here asserted at December Term, 1864, in *Gelpcke* v. *The City of Dubuque.*† The court in that great case,—argued thoroughly, deliberately considered, solemnly adjudged,—says:

"The sound and true rule is, that if the contract when made was valid by the laws of the State as then expounded by all departments of the government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of the legislature, or decision of its courts altering the construction of the law. The same principle applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law. To this rule, thus enlarged, we adhere. It is the law of this court. To hold otherwise, would be as unjust as to hold that rights acquired under a statute must be lost by its repeal."

Our case falls within this principle. The bonds were issued in 1853, were disposed of, and were circulating in the market with full approbation of the legislature; the people of the county; every department, including the judicial tribunals of the State, until the year 1859; and during all these years, in which the bonds were made and sold, they were valid and legal contracts, and would have been enforced by our State courts, upon the ground that the acts authorizing their issue were *private and local laws and were in force from their passage without publication.*

---

* Clark *v.* City of Janesville, A. D. 1860.       † 1 Wallace, 175.

It is unimportant in view of the decision of this court in *Gelpcke* v. *Dubuque*, whether the late decisions of our State court give or do not give the sounder construction of our constitution.   In subsequent contracts this court may regard them as giving that which is the sounder; but the action of the State, in its legislative, administrative, and judicial departments, during the period of the making and negotiating of *these* bonds, must furnish the rule to be applied in all suits founded upon *them*, whether, in the opinion of this court, that action was right or wrong.   It was the law of the contract and cannot be changed without destroying the obligation of what, when made, was valid and binding.

3. Assuming, as we do, that the court must take the view which we present on these two points, we are not solicitous as to the answer which it may give on the last point certified.   If any answer is given, it must follow the answer to the others.

*Mr. Ryan, contra:* Mr. Carpenter refers to the distinction which has passed into technical law between general laws and particular or special laws.   But the act of 1852, directing a classification, does not use the terms " general law," but uses another expression, " acts of a *general nature*," which it distinguishes from " private and local acts."   This shows that it was not the intention of the legislature to classify its statutes by their legal character, but according to the public interest in having access to them.   The first class is to contain all " acts of a general nature," but not all " general acts."   The second class is to contain all general acts which are local, all charters which are public, and all private acts. It is inconceivable how a municipality, with a changing population, amounting from hundreds of political units to hundreds of thousands, and capable of including, and almost inevitably including, property of strangers affected by all legislation having relation to it, could be bound by a private act.   If the act before the court can be dealt with as a private act, it is not seen on what distinguishing principle, absurd as the proposition is, all municipal law might not be found in private statutes.

The counsel would seem to rely on the classification made by the secretary of state and the attorney-general, which two officers regarded the act as one of a private nature, and classified it accordingly. But the question whether a statute is public or private, is judicial. No question of interpretation is more purely so. The constitution of Wisconsin, in common with most of our American constitutions, exhausts the judicial power; and it is not competent for the legislature to vest it in persons or officers, other than such as the constitution prescribes. Here, the duty of classification is given to ministerial officers. And their action is not only not binding, but is of no weight in the courts. It is for the judicial department to declare *their* acts right or wrong; not for *them* to impose judicial construction upon the courts.

Confessedly, every decision in the highest courts of Wisconsin since the case of *State* v. *Leon,* including that one, has been that these acts are general laws. In *Hewett* v. *The Town of Grand Chute,* whose language is extracted and presented as conclusive on the other side, and to which opposite counsel invites specially the court's attention, the matter was not in issue. Attention was not directed to it. *Assuming* the act to be a private one, the court held it to be rightly pleaded. That is all. The decisions then are unbroken.

There is a uniform and settled rule of adjudication upon the constitution and laws of the State; followed by all the courts of the State, and, in the State courts, recognized and admitted by the bar of the State.

In questions of State institutions and policy, not conflicting with the Federal Constitution, the several State courts are the appropriate tribunals to give the rule of decision; and this court has, therefore, from the earliest times, with high judicial comity and political sagacity, followed the rule of State decision upon State statutes whenever such a rule was to be found clearly established. "This court has no authority," was the language of a case from Pennsylvania, "to revise the act of that State upon any grounds of justice, policy, or consistency to its own constitution. These are concluded by the decision of the public authorities of the

State." The quotation is the law of our controversy. And it will be a calamity, not only to the judicial, but to the political history of the country, if time should witness the departure of this court from its ancient practice of just and conservative forbearance, and its regard of the State rule of decision on questions of purely State law. With this long-settled doctrine of the court the action of the people and courts of Wisconsin is not open for argument. It is enough that the people of Wisconsin have formed their constitution as they have, and that the Supreme Court of the State interpret it as they do. That is their right solely. The State having been admitted into the Union under a constitution approved by Congress, and not repugnant to the constitution or laws of the United States, no department of the Federal government has power to set it aside, to treat it as a nullity, or to destroy it by interpretation, in matters properly subject to it.

The third question certified, is abstract. It calls for the opinion of this court, whether *any* act or omission of the county, its officers, or electors, under the condition stated, could render the bonds valid or estop the defendant. If any such act or omission could have such an effect, that would depend upon the character of the particular act or omission, the time of its occurrence, the persons by whom and with whom done or omitted and their authority, and generally the circumstances under which done or omitted. All these conditions rest, in the question, in supposition. There are no recitals in the bonds themselves. There is therefore nothing in the record bearing on this question. The record discloses only the facts of the election, the execution of the defendant's bonds, and the exchange or issue of them. It was not contended in the court below, and it is not here, that these facts have any tendency, of themselves, to render the bonds valid or to estop the defendant from questioning their validity, if the act was not in force. The question certified did not " occur" in the court below, but only suggested itself as something which might occur; it did not *meet* the judges, and was not involved in any decision they were

called upon to make. It is not an occurrence, but only a supposition, and not within the act of Congress. The court below, therefore, had no jurisdiction to certify it here; and this court has no jurisdiction to decide it.

Mr. Justice SWAYNE delivered the opinion of the court.

In the view which we have taken of the first two questions which are presented by the certificate of division for our consideration in this case, they may be properly considered together. They are:

1. Whether the act in question is a general law within the meaning of the constitution of Wisconsin.

2. Whether the act not being published as a general act, and having been first published after its passage in the volume of local and private acts, and after the issuing of the bonds, is not such an exercise of power by the State government or legislature, showing that the act is not a general act, as is binding on the courts.

The secretary of state and the attorney-general decided that the act was not a general law, but a local act. This decision, as to the character of the act, was made by those upon whom the law devolved that duty. It is not suggested that the decision was not fairly made, nor is it denied that it was in accordance with the rule which had prevailed down to that time, and which prevailed subsequently until the Supreme Court passed upon the subject, in the case of the *State* v. *Leon*, which was decided in the year 1859.

This action is conclusive as to the executive department of the government prior to that period, and it is entitled to the greater weight from the fact that the highest law officer of the State participated in the decision.

The subject came incidentally under the consideration of the Supreme Court of the State, in *Hewett* v. *The Town of Grand Chute.* The question in that case was, whether a statute, in all respects identical with the one under which these securities were issued, as regards the questions before us, was pleaded as a private act should be. The question whether *it was a private act* was not made in the case. That

was impliedly conceded by the counsel on both sides. The language of the court in this case has been quoted and commented on at the bar.* We need not repeat it. It presents a clear judicial recognition by the highest court of the State in accordance with the previous determination of the executive department. The executive and judicial departments were in harmony upon the subject. This case was decided in 1858. It shows the understanding of the bar and the bench down to that time.

Prior to that period no intimation had been given by any department of the government that such statutes were to be regarded otherwise than as local in their character, and broadly distinguished from general laws within the meaning of the constitution.

The subsequent adjudications in the *State* v. *Leon*, decided in 1859, and the cases which followed it, hold that such statutes are "of a general nature," and have no validity until published. But being long posterior to the time when the securities were issued, they can have no effect upon our decision and may be laid out of view. We can look only to the condition of things which subsisted when they were sold. That brings them within the rule laid down by this court, in *Gelpcke* v. *The City of Dubuque*. In that case it was held, that if the contract, when made, was valid by the constitution and laws of the State, as then expounded by the highest authorities whose duty it was to administer them, no subsequent action by the legislature or judiciary can impair its obligation. This rule was established upon the most careful consideration. We think it rests upon a solid foundation, and we feel no disposition to depart from it.

Whether the statute here under consideration is intrinsically general or local in its character, is a question which we have not found it necessary to consider.

The third question presents merely an abstract proposition. No facts are disclosed in the record which show that it has arisen or can hereafter arise in the case. Under such

* See *supra*, p. 298.

circumstances it is the settled practice of this court to decline to answer. It is necessary that the question should involve a distinct legal point, and that sufficient facts should be set forth to show its bearing upon the rights of the parties.* In this case all the facts relied upon as operating to ratify should have been set forth. Any point of disagreement between the judges relating to the subject would then have appeared in its proper light and could have been definitely answered. As the question is presented the answer, if given, would be equally general, and, like the question, a mere abstraction, which could subserve no useful purpose in the further progress of the cause.

The answer to the first and second questions certified up will be that, under the circumstances, the statute referred to must be held in this case to be a local act, and not a *general law*.

To the third question, for the reasons stated, no answer will be given.

ORDER IN CONFORMITY.

[See, on the last point of this case, *supra*, p. 250, *Daniels* v. *Railroad Company.*—REP.]

* Crooker et al. v. Newton, 18 Howard, 581; United States v. The City Bank of Columbus, 19 Id. 385.