# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## APRIL TERM, 1877.

---

### J. B. HALL *v.* E. M. WELLS ET AL.

1. PROBATE SALE. *Action to recover property. Limitation of one year.* Code 1871, § 2173.

   Code 1871, c. 45, § 2173, which provides that " no action shall be brought to recover any property heretofore sold by any administrator, executor or guardian, by virtue of the order of any Probate Court in this State, on the ground of the invalidity of such sale, unless such action be commenced within one year after this chapter shall take effect, if such sale shall have been made in good faith and the purchase-money paid," embraces a sale made under an order of a Probate Court by a father who was appointed in 1855 by such court guardian of his child. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665, cited.

2. PROBATE COURT. *Power to appoint father guardian of his child.*

   The Probate Court, under the Constitution and laws of Mississippi, in 1855, had power to appoint a father guardian of his minor child. *Stewart* v. *Morrison*, 38 Miss. 417, and cases following it, disapproved.

3. SAME. *Practical construction of Constitution. Rule of property.*

   The popular construction given to the words " orphans' business," in the Constitutions of 1817 and 1832, that they included a minor whose father was alive, having been accepted and acted on by the legislature and the people, and by the courts of original jurisdiction until the decision in *Stewart* v. *Morrison*, in 1860, will, of itself, cause titles acquired at such guardians' sales prior to that decision to be upheld. *Per* SIMRALL, C. J.

4. CODE 1871, § 2173.　*Appointment of guardian void.*

Code 1871, § 2173, embraces a sale made under an order of a Probate Court, by a guardian appointed and qualified, even though his appointment is void for want of jurisdiction in the court to make it. CHALMERS, J., dissented.

5. RESTITUTION.　*On reversing judgment in ejectment.*

Where, pending a writ of error from a judgment in ejectment not superseded, the plaintiff in the Circuit Court enforces the judgment by final process, the plaintiff in error, on reversal, should be restored to possession.

6. SAME.　*Practice.　Where record does not show deprivation.*

The Appellate Court may award the writ of restitution if the case before it shows a privation of possession; but, if that fact does not appear upon the record, the plaintiff below must be notified, by *scire facias*, to show cause why the writ should not issue.

7. SAME.　*Proceeding under our system in Circuit Court.*

Although the Appellate Court, in those systems where through its own process it carries out its judgments to full completion, might properly award the *scire facias*, yet, in this State, where proper process is issued from the Circuit Court on the mandate being sent down from the Supreme Court, the better practice is for the *scire facias* to issue returnable to the Circuit Court, and, on proof of eviction from the land, for judgment to be given awarding the writ of restitution, and to deny a motion for the writ in the Supreme Court.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

E. M. Wells and D. S. Wells, the devisees of the lands in controversy under the will of Polly Wells, on Sept. 1, 1875, brought this action of ejectment against J. B. Hall, to which he pleaded not guilty, and the Statute of Limitations. There was a verdict and judgment for the plaintiffs.

The bill of exceptions discloses that, in 1855, Polly Wells died, leaving the will, which was duly probated. On Feb. 6, 1855, Spiva M. Wells, the father of the devisees, who were then minors, filed his petition in the court where the will was probated, praying that letters of guardianship of the estates of said children should be granted him; which was done, and the letters accordingly issued. He then filed a petition in the said Probate Court, praying that the lands be sold. A decree being made, they were sold thereunder, and bought by W. H. McAlpin, on Jan. 21, 1856; and the same day sold by him to

J. B. Hall, the defendant.    The case thus presented two questions : —

1. Whether a sale of the lands of minors by their father, who had been appointed their guardian by decree of the Probate Court, under the Constitution of 1832, passed title.

2. Whether the special Statute of Limitations, § 2173 Code 1871, interposing a bar to attacks upon sales made under decrees of the Probate Courts, is operative, where the sale was made under a decree void *ab initio.*

The second and fourth instructions given for the plaintiffs answered these questions in the negative ; and the first instruction for the defendant, which answered them in the affirmative, was refused.

A motion for a new trial was made upon the ground, among others, of the giving of those two charges for the plaintiffs, and the refusal of the first for the defence ; and on the overruling of the motion the defendant sued out this writ of error.

*J. B. Chrisman,* for the plaintiff in error, argued the case orally.

*Chrisman & Thompson,* on the same side.

1. The words " minors' business " and " orphans' business " were used in the same sense and interchangeably by the legislature from the foundation of the State government to the adoption of the Constitution of 1832.    Hutch. Code, 675, 677 ; Revised Code, 1824 (Poindexter), pp. 27–70 ; Stats. Miss. Ter. (Toulmin) p. 94, § 15, pp. 297–300 ; Acts 1824–38, pp. 173, 174 ; Acts 1830, pp. 61–64 ; Acts 1799, p. 33 ; Dig. Miss. Ter. p. 433.    Subsequent to the adoption of that Constitution (1832) the legislature used the words in the same sense.    Hutch. Code, 509 ; Acts 1846, pp. 144–151 ; Acts 1848, pp. 157–160 ; Acts 1850, p. 123.    Such a uniform construction of words, though technically erroneous, is adopted by the courts, because it becomes a rule of property, and its correction works hardship and injustice.

The authority of *Stewart* v. *Morrison,* 38 Miss. 417, and cases following it, leads to this unfortunate state of the law ; while the Probate Court had authority under its statutory jurisdiction to deal with the property of a minor whose father was living, there was no power in the court to grant letters of

guardianship for the protection of the fund. It had no discretion, in a proper case, to refuse to sell the lands of an orphan; and yet if such orphan's co-tenant was a minor with a father living, the court could not protect the proceeds. It is no answer to say that the Probate Court could have appointed a committee or trustee to take charge of the fund; for that is to admit the power, and quibble about the name. This is not only absurd, but in the face of direct and unquestioned authority. 3 Black. Com. 427; *Powell* v. *Burrus*, 35 Miss. 605. From the necessity of the situation, the power resided in the Probate Court to appoint a guardian for any minor whose lands it had the authority to condemn. It was a power incident to the proper exercise of its jurisdiction, and plainly inferable from the organization of our judicial system, aside from the statutes. There was no power in a Chancery Court to sell the lands of a minor for his benefit; and, unless it resided in the Probate Court, it did not exist. The legislature did possess the power to confer the jurisdiction. Though not expressly overruled, *Ex parte Atkinson*, 40 Miss. 17, and *Earle* v. *Crum*, 42 Miss. 165, cannot be sustained either on principle or authority. The most that can be said, therefore, is, that when this sale was made (before 1857) the power had not been exercised by the legislature. But the jurisdiction may, nevertheless, be sustained; and the extraordinary omission can only be accounted for on the ground that legislation proceeded on the idea that the relation was established by nature. In other words, it needed no act of the legislature or of the court to make the father a guardian or custodian of his child's property; but it did require, and only required, the execution of a bond to account, to authorize him to exercise all the powers and be charged with all the burdens of other guardians. See 1 Black. Com. 380, 453; Schouler on Domestic Relations, 414; 2 Ala. 259. It may be conceded that the weight of authority is against the doctrine that the father is such custodian. The question remains, Did the legislature adopt that view? If so, the problem is solved. 31 Conn. 554.

2. It is claimed that the appointment of Wells being invalid, the sale is not within the provision of Code 1871, § 2173. That is to emasculate the statute by a refinement upon its

phraseology. Such construction is condemned. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665. This court having decided in that case that the statute was remedial, and that in its application the court would, as far as possible, make it efficacious, it is now too late, unless the court abandons the logic of that decision, to stand upon a technicality. All agree now that the statute may apply to a sale made without notice to heirs, and from the proceeds of which they received nothing ; but in this case we are told that, though the sale was on notice, and the proceeds properly accounted for, the bar does not apply, and for no other reason than that the father was appointed the guardian. Such a construction is strained, and such a distinction and discrimination never entered the legislative mind.

*M. Green*, on the same side, made an oral argument.

*Potter & Green*, on the same side.

1. The Probate Court had jurisdiction to appoint a guardian to a minor, whether fatherless or not.

The legislation of this State from the beginning proves that the words "orphans' business," used in the Constitutions of 1817, art. 5, § 7, Hutch. Code, p. 32, and of 1832, art. 4, § 18, Hutch. Code, p. 45, were not used in a narrow or technical sense. The Territorial Act of 1799 (p. 33) authorized the Probate Court to appoint guardians to "*minors*." The act of March 12, 1803, vested in the *Orphans' Court* jurisdiction "for appointing guardians to *minors*, idiots, lunatics and persons *non compos mentis*," and gave "full jurisdiction of all testamentary and other matters pertaining to an *Orphans'* Court." Dig. Miss. Ter. p. 432, § 1. The "*Orphans'* Court" might appoint a guardian to "any *minor*." Ibid. 444, § 30. In Stats. Miss. Ter. (Toulmin), p. 94, § 15, p. 294, § 44, we have the word "*minors*," and, with reference to like matters, the word "*orphans*." p. 94, § 15, p. 297, § 44. These citations show that in the Constitution of 1817 the words "orphans' business" meant "minors' business."

The first section of the act of 1803 was copied into Poindexter's Code, and it gave the "Orphans' Court" power to appoint guardians to "*minors*." Revised Code, 1824 (Poindexter), p. 27, § 1. We find in reference to like matters the word

"orphans." Ibid. 65, § 125. So the judge of probate "might appoint guardians to *minors*." Ibid. 52, § 87. Guardians were to be appointed for bastards. Ibid. 228, § 7. The act. of Jan. 31, 1826, speaks of the guardian of "any *minor*." Acts 1824–38, p. 96, § 1. And this after the Constitution of 1817.

After such fixed interpretation of these words, they were copied into the Constitution of 1832, and continued to be so used. "Any guardian of any *minor* or *minors* may resign." Acts 1850, p. 123. Certain sections were extended to "guardians of *minors*." Acts 1848, p. 160, § 6. The court must appoint a guardian of the estate of any non-resident "*minor*." Acts 1846, pp. 227, 228. Non-resident guardians might remove the property of "any minor or minors." Acts 1846, pp. 155–158.

It is thus manifest that in the legislation of this State prior to 1832 the words "Orphans' Court" and "orphans' business" were used as applicable to *all minors*, whether fatherless or not. With this accepted meaning the words "orphans' business" were inserted in the Constitution of 1832. It is plain that the constitutional convention at that time, in the use of that phrase, intended to extend it to those subjects which were, according to the popular and legislative acceptation of the terms, matters pertaining to "orphans' business;" that is, to the business of *minors*. *Servis* v. *Beatty*, 32 Miss. 52, 87. The same rule was applied as to "matters of equity." 11 S. & M. 65. In *Stewart* v. *Morrison*, 38 Miss. 417, this doctrine was overlooked. It was again asserted as to the word "sheriff" as used in the Constitution of 1869. *French* v. *State*, 52 Miss. 759.

2. Contracts and transactions based upon a prevailing construction of a statute are good, though a construction afterwards prevails which would render them invalid. *Gelpcke* v. *Dubuque*, 1 Wall. 206 ; 3 Wall. 294 ; 4 Wall. 274 ; 9 Wall. 477 ; 5 How. (U. S.) 139 ; 16 How. (U. S.) 369, 431. For the same reason a mistake in the printed pamphlet acts long practised on was upheld against the terms of the original act. 18 How. 596. Such usage "fixes the construction." 1 Cranch, 299. "*Communis error facit jus*." 2 Mass. 475 ; 1 Dall. 17 ;

1 Dall. 21; 1 Pet. C. C. 439; 18 How. 597; 1 Cal. 498; 37 Miss. 185; Sedg. Const. & Stat. Const. 227.

3. Sect. 2173 Code 1871 was a bar to the action, and it was error to refuse so to charge the jury. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665.

*E. E. Baldwin*, for the defendants in error, argued the case orally, and filed a brief, making the following points: —

1. The Constitution of 1832, art. 4, § 18 (Code 1857, p. 30), authorizes the establishment of Probate Courts with jurisdiction in " all matters testamentary and of administration in orphans' business and allotment of dower, in cases of idiocy and lunacy, and of persons *non compos mentis.*" This was the jurisdiction of the Probate Court at the time of the proceedings therein in the present case. Jurisdiction is only given to appoint guardians for minors who are orphans. *Stewart* v. *Morrison*, 38 Miss. 417; *Ex parte Atkinson*, 40 Miss. 17. The legal meaning of the term " orphan " is a " fatherless child," and the word was used in the Constitution with that meaning. *Stewart* v. *Morrison, ubi supra.* Consequently the Probate Court had no jurisdiction of the guardianship of the estates of minors whose fathers were living. *Stewart* v. *Morrison, ubi supra; Poston* v. *Young*, 7 J. J. Marsh. 501.

Of what validity would be proceedings had by a Probate Court in such a case? Judgments and decrees of courts having no jurisdiction are void *ab initio.* Freeman on Judgments, § 120; *Earle* v. *Crum*, 42 Miss. 165. The last case cited is exactly similar to the present one. In it the children attempted to compel their father, who had been appointed their guardian, to make a final account of his guardianship. The court decided that the order of court appointing Earle guardian was absolutely void; that he was, consequently, never the legal guardian; and that the whole proceeding, on final settlement, was *coram non judice* and void. If *one* proceeding in such a case would, by reason of the want of jurisdiction, be *coram non judice* and void, any other proceeding had in such a case would be also void for the same reason. A judgment pronounced by a tribunal having no authority to determine the subject-matter in issue is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in

which it is drawn in question. Freeman on Judgments, § 120;
*Cooper* v. *Reynolds*, 10 Wall. 308. Then the order of court
appointing Spiva M. Wells, the father of the defendants in
error, their guardian was absolutely void; he was never their
legal guardian; the order of sale was void; and the sale itself,
and all subsequent proceedings under it, including the deed,
were void. For, the foundation gone, all must fall together.
Freeman on Judgments, § 117.

2. We next come to the consideration of the question whether
the special Statute of Limitations, enacted in the Code of 1871,
§ 2173, was a bar to the action in this case. It provides that
sales made under decrees of Probate Courts before that
time should not be attacked after the space of one year
subsequent to the Code of 1871. We have plainly shown
that the decree in this case was absolutely void. Being void,
it is in effect no decree whatever. Freeman on Judgments,
§ 117. There is, then, nothing for the statute to operate upon;
no defect for it to heal: it is a nullity. No action on the part
of the defendant or inaction on the part of the plaintiffs, no
resulting equity in the hands of third persons, can invest it
with any of the elements of power or vitality.

The counsel then reviewed *Morgan* v. *Hazlehurst Lodge*,
53 Miss. 665, distinguishing it from this case; and, — citing
22 Iowa, 1; 20 Cal. 288; 28 Iowa, 188; 1 Vt. 74; 19 Ill. 228;
23 Wis. 370; Angell on Lim. § 329; and Cooley on Const. Lim.
383, — concluded that, in this case, the statute invoked does
not apply.

The judges delivered opinions *seriatim.*

CAMPBELL, J.:

If § 2173 of the Code of 1871 embraces a sale made by
order of a Probate Court by a father who had been appointed
by such court guardian of his children, this action was barred,
because not instituted within one year after said section took
effect. It has been argued that the appointment in the year
1855 by the Probate Court of the father of the minors as
their guardian was wholly void, and he was not guardian,
and the sale he made by order of the Probate Court was not a

sale by a guardian; and, therefore, although the sale was in good faith as a matter of fact, and the purchase-money paid, and the land occupied by the purchaser in the belief that he had a perfect title under the sanction of the Probate Court, his possession is not protected by § 2173 of the Code.

We adhere to the views expressed in *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665. The section of the code cited was not intended, and does not have the effect, to cure by express enactment illegal or defective proceedings in the Probate Court for the sale of property by administrators, executors or guardians. It has no retrospective operation, but is wholly prospective. It is founded on a view of the past, but looks to the future. It originated in the known fact that a very large proportion of the sales of property by virtue of the orders of Probate Courts was void, from various causes; and, as insecurity of titles to property is a great public evil, it was determined to provide a short statute of limitations applicable to all cases falling within the existing evil; and the section under review contains the provision to remedy it, not by relating back and validating proceedings, but by requiring all actions to recover any property before that sold by any administrator, executor or guardian, by virtue of the order of any Probate Court, on the ground of the invalidity of such sale, if the sale was in good faith and the purchase-money paid, to be brought within one year after said section should take effect.

This section applies to all sales of the class mentioned which are invalid, no matter on what ground. Every sale which is included in the evil intended to be remedied is embraced. The object aimed at is the barring of all actions after the lapse of one year from the 1st of October, 1871, to recover property sold " by virtue of the order of any Probate Court in this State, on the ground of the invalidity of such sale," if such sale was made in good faith and the purchase-money paid. The enumeration of administrators, executors and guardians was to cover all sorts of sales by virtue of the order of any Probate Court. The section does not involve the idea of a legally appointed and qualified administrator, executor or guardian, who made a sale by virtue of the order of any Probate Court. The language is, " *any* administrator, executor or guardian by

virtue of the order of any Probate Court." It is not *any legally appointed and qualified* administrator, executor or guardian; and to hold that the statute applies only to sales by a legally appointed and duly qualified one is to interpolate the section, and to circumscribe its beneficial operation within narrower limits than the evil to be remedied, and than, it is to be justly assumed, the legislature intended.

It must be presumed that the legislature had in view the legislative and judicial history of the State, and acted with the knowledge that from the time of the territorial existence of Mississippi it had been the habit of the courts charged with orphans' business to appoint guardians for minors whose fathers were living; that the terms " orphans " and " minors " were used interchangeably and as convertible terms in statutes passed both before and after the Constitution of 1832; and that it was not until the year 1860 that it was judicially declared that the power of the Probate Courts to appoint guardians did not extend to minors whose fathers were living, during which long period, in a multitude of instances, guardians had been appointed for minors having living fathers, and vast quantities of land had been sold by such guardians, by virtue of orders of the Probate Courts, and had been sold in good faith and paid for; and it must be supposed that, in providing a measure to quiet titles acquired by virtue of orders of Probate Courts, it was not the intent to exclude this large class of sales, but to include them as falling within the mischief to be remedied. Persons appointed guardians of minors not fatherless were called guardians, and treated as such by the courts and the public. They acted as such in all respects; and whether legally such or not, must be held to be embraced in the language " *any* guardian," as used in the statute under review.

The good faith mentioned is actual good faith, consisting in honest belief; and so the administrators, executors and guardians meant are those who acted as such under appointment of the Probate Courts, and under their authority, given in the forms of law, dealt with the estates of decedents and minors. It is not the validity of the action of the Probate Court which affords protection after the expiration of one year, but the fact of holding under a sale made, as matter of fact, in good faith,

and purchase-money paid, which the statute seizes upon, and because of these *facts* bars recovery by the true owner. Invalidity of all kinds, whether merely irregular or void, is presupposed and assumed ; and hence the statute to bar the owner, if he should not proceed to recover the property in one year. There are various states of case in which an appointment by the Probate Courts of administrators, executors and guardians was void for want of power in the court to do the act; but it was not intended by the legislature that the holder of property, under sales by virtue of the order of a Probate Court, should be required to vindicate the power of the court to order the sale, nor its power to appoint the person who invoked the order of the court to sell. The statute was passed with direct reference to the known condition of things, and to meet that, and not upon the view that proceedings in the Probate Courts were what they should have been under the Constitution and laws. The statute does not proceed on the idea of notice to the true owner, by the records of the Probate Court, that his land has been sold ; but it requires adverse holding, as calling on the owner to institute his action. This is a necessary implication of the section under consideration. An adverse holding, under a sale made by a guardian appointed for his own children, is just as effectual as notice to the true owner as a like holding under any sale.

But, in addition to what has been said, we all agree, after the maturest consideration, that the construction placed upon the Constitution and laws in the case of *Stewart* v. *Morrison*, 38 Miss. 417, and cases following that, should not be adopted and followed. We think the Probate Court did have the power in the year 1855 to appoint a guardian to a minor whose father was living.

It follows from these views that the second and fourth instructions for the plaintiffs below were improperly given, and the first instruction asked by the defendant below was improperly refused. It is not deemed necessary to pass upon the action of the court below upon the pleadings, as the foregoing view is supposed to be decisive of the case.

*The judgment should be reversed and new trial awarded.*

SIMRALL, C. J.:

I concur in the result, and also in the views of Mr. Justice Campbell as to the construction of that section of the Constitution of 1832 creating the Probate Court and conferring jurisdiction upon it. I think that the words "orphans' business," as there used, are equivalent to the words "minors' business," and should not have received the narrow and literal construction given to them in *Stewart* v. *Morrison*, 38 Miss. 417. I also agree with him, that the sale in question was embraced in the Statute of Limitations applied to it, even though the Probate Court had not jurisdiction to appoint the father guardian of his children. But I am further of opinion that it is not necessary to overrule the case of *Stewart* v. *Morrison*, *ubi supra*, and others dependent upon it, to reach the conclusion announced.

It is a sensible and altogether reasonable rule that a constitution should be construed in the sense it is supposed to have been understood when adopted. *Leavenworth County* v. *Miller*, 7 Kansas, 479. The words "orphans' business," in the Constitution of 1817, art. 5, § 7, were not employed in the literal sense of the word "orphan" as defined by lexicographers. The legislature from the earliest times had used the word as the equivalent of "minor." Thus the Territorial Act of 1799 gave authority to the Probate Court to appoint guardians to "minors." The act of 1803 vested power in the Orphans' Court to appoint guardians to minors, and "full jurisdiction of all testamentary and other matters pertaining to an *Orphans' Court*." Dig. Miss. Ter. p. 432, § 1. That court might appoint a guardian to "any minor." Dig. Miss. Ter. pp. 444, 445. With such legislation still in force, the Constitution of 1817 used the words "orphans' business" in the sense of the statutes, as conferring authority to appoint guardians for *minors*, whether the fathers were living or not. The act of 1803 was copied into Poindexter's Revision, p. 27, § 1. So the probate judge might appoint guardians to "minors." Revised Code, 1824 (Poindexter), p. 52, § 87. Without pursuing this line of investigation further, it is manifest that both in the Constitution of 1817 and that of 1832 the words "orphans' business" were used, not in

a restricted sense, but as of the same import as "minors' business."

The legislature, the people and the courts of original jurisdiction acted upon that meaning of the words "orphans' business" from 1817 until 1860, when a different construction was put on them in the case of *Stewart* v. *Morrison, ubi supra.* It is believed that during that long period of over forty years the legislative and popular interpretation had been as I have stated; and as necessity arose, guardianship was granted of any and all minors, without regard to whether they had living fathers or not. For the necessity was just as great where the minor had property for guardianship if the father were living as if he were dead. Assuming that this long-continued practical rendering of the words was an error, yet the principle is well settled that the practical construction given to a statute or Constitution by the officers of State, and acted upon by the people, is decisive. *Union Ins. Co.* v. *Hoge,* 21 How. (U. S.) 35. Contemporaneous construction under which rights property have been acquired should be followed, if possible. *In re Warfield,* 22 Cal. 51. These are persuasive reasons why the courts should not overturn long-established practical construction, although erroneous.

But the principle has a wider and more beneficent range. If the courts do place a different construction on a statute or Constitution than that long acquiesced in practically, contracts made or rights of property acquired before the change shall be respected. The rule was clearly announced and applied in *Gelpcke* v. *Dubuque,* 1 Wall. 175, 206, "that if the contract when made was valid by the laws of the State, as then expounded by all departments of the government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent action of legislation, or decision of its courts altering the construction of the law." Also *Ohio Life Ins. & Trust Co.* v. *Debolt,* 16 How. (U. S.) 416, 432; *Havemeyer* v. *Iowa County,* 3 Wall. 294, 303; *The City* v. *Lamson,* 9 Wall. 477, 482; *Milligan* v. *Dickson,* Pet. C. C. 433, 439. The last case had reference to the validity of a deed and title under which the party held his property. Upon no theory can security be given to contracts and titles, and at the

same time progress and improvement be made in jurisprudence, but by shaking off the errors of the past, while we uphold contracts made and titles acquired while the error prevailed.

A practical interpretation of the Constitutions of 1817 and 1832, so long acquiesced in and adopted, is surely of as high authority as the decision of an Appellate Court, and ought to uphold all the titles to property sold under probate decrees as belonging to wards before the decision in 1860, declaring that construction of the powers of the Probate Court to have been wrong. It seems to me that it would have been sufficient to have rested our judgment on the maxim " *communis error facit jus.*" Whether, therefore, the judgment in *Stewart* v. *Morrison, ubi supra,* be overruled or not, upon the ground which I have attempted to explain this judgment should be

*Reversed.*


CHALMERS, J.:

If the decisions of the High Court of Errors and Appeals and of this court, which declared that the Probate Court had no jurisdiction to appoint a guardian for a child whose father was living, are to be regarded as correct expositions of the Constitution of 1832, I cannot concur with my associates in holding that the purchasers of realty sold by such guardians are entitled to invoke the protection of § 2173 of Code of 1871. I regret this the more, because such a construction would render more valuable a wise and beneficent enactment; and I have, therefore, striven earnestly to persuade myself that it is sanctioned by the language of the statute.

As remarked in the opinion of Mr. Justice Campbell, § 2173 is a pure statute of limitations, and, therefore, a statute of repose, which, without undertaking to validate any thing done in the past, enacts that rights of property, under certain circumstances, shall be asserted within twelve months from the passage of the act, or they shall be forever barred. Nevertheless, before the plaintiffs can be estopped, or the defendant protected, each one of the prerequisites enumerated in the statute must exist. These prerequisites are: (1) a sale by an administrator, executor or guardian, (2) by virtue of an order of the Probate Court, (3) made in good faith, and

(4) payment of the purchase-money. The absence of any one of these is as fatal as if none of them existed, and no one of them can be deemed more essential than another. If there was no administrator, executor or guardian, it is just as fatal as if there had been no order of court, or no sale of the property.

Could there have been a guardian when the person assuming to act as such did so only by virtue of an appointment from a tribunal which had no jurisdiction to appoint one, not from a want of personal jurisdiction over him, or for want of notice to those for whom it attempted to appoint him, but because by reason of the Constitution of the State it was prohibited from appointing a guardian for such persons? No process that it could issue, no notice that it could give to the minors, could give it jurisdiction either of their persons or of their property, if the decisions above alluded to were correct, because it was not permitted by the Constitution to deal with either. It had no more power to affect them in person or in estate than it had to inflict capital punishment.

I cordially concurred in the view of this statute announced in *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665, to the effect that it would apply, although in the proceedings for the sale in the Probate Court there had been no service of process on the defendants; because, although such a sale would be void for want of jurisdiction of the persons, yet it was entirely competent for the legislature to apply a prospective statute of limitations to a void sale, and the language of the statute embraces all orders, whether erroneous, voidable or void.

So also it was entirely competent for the legislature to embrace sales made by persons supposed to be guardians, or acting as guardians; and I sincerely wish that they had done so. But the language is " *any guardian.*" A person holding letters from a tribunal which could not grant them is no more a guardian than if he had no letters at all. The language, " by virtue of the order of any Probate Court," will embrace a void order, because it is still an order made by the court; but he who has been named as guardian by a tribunal that could not create one is not embraced in the words " any guardian."

But there is a distinction more vital than this criticism upon

words. It grows out of the difference between want of jurisdiction over the person and want of jurisdiction over the subject-matter. Though from the poverty of our language judicial acts without jurisdiction of the person and those without jurisdiction over the subject-matter are alike properly styled void (and acts merely voidable are frequently improperly so designated), there is, nevertheless, a broad and fundamental distinction between them. Jurisdiction over the parties may be acquired by constructive notice, by voluntary appearance, by consent, and it is frequently conclusively presumed in opposition to the truth from a mere recital in the record. It may be conferred by the unauthorized act of an attorney who appears without the knowledge or consent of the party whom he pretends to represent. Most important of all, when none of these things exist, none but parties and privies can allege voidness in the proceedings, or either directly or collaterally call them in question. But none of these things, nor all of them combined, can give the faintest semblance of authority to the judgments of a court in relation to a subject over which it had no jurisdiction; nor will those judgments afford the slightest protection to any person who attempts to take shelter beneath them. They are nullities always and under all circumstances, and nothing can give them vitality. The consequences of this are obvious. Third persons may well suppose under some circumstances that judicial acts, void for want of jurisdiction of the person, have by some act of the party become valid; but all men are bound to know that no power can breathe the breath of life into a judgment rendered by a tribunal which could not even consider the subject.

In the case at bar, the very deed under which the defendant claims states upon its face that it is made " under a decree of the Probate Court, by Spiva M. Wells, guardian by appointment of the said Probate Court of Hinds County of his three sons." It thus distinctly informed them not only that the grantor was not a guardian, but that the tribunal which had undertaken to declare him such could not appoint one. If the Probate Court under any circumstances could have appointed a guardian for these minors, and had made a defective appointment, as, for instance, if it had appointed a second

guardian while there was another in existence, it might come within the meaning of the law, for there the subject-matter of the guardianship would be within the scope of its jurisdiction; but where under no possible circumstances can it have jurisdiction to appoint a guardian, the man who holds its letters is no more a guardian than if they had been granted by a justice of the peace, or by the High Court of Errors and Appeals, or if he had none at all. I have said that the words "by virtue of the order of any Probate Court" would embrace a void order. I should have qualified it by adding, *provided* it was as to a subject cognizable in that court; for although a legally qualified administrator or guardian might have sold land with the utmost regularity of proceeding, the purchaser could not rely upon the protection of this statute, if it was in a suit of which that court had no jurisdiction, as, for instance, the foreclosing of a mortgage or a specific performance of a contract of purchase.

The object of the statute was to compel parties who designed asserting rights adverse to titles derived through the Probate Court, or who had rights which might be so asserted, to bring their actions speedily, or be forever barred. For this purpose they were given one year within which to look into and assert their claims; but they were not by the language of the statute, whatever may have been its intention, compelled to examine the records of the Probate Court, to ascertain if it had assumed jurisdiction over subjects forbidden to it by the Constitution, as, for instance, to see whether it had rendered judgments on promissory notes, granted alimony in divorce suits, appointed guardians in cases not authorized by the Constitution, and, through officers whom it had no authority to appoint, sold land under decrees which it had no jurisdiction to render.

I concur, however, with my associates in thinking that the decisions which announced that, under the Constitution of 1832, the Probate Court had not jurisdiction to appoint a guardian for a child whose father was living, were erroneous. I think it is clearly demonstrable from the preceding and contemporaneous legislation and jurisprudence of the State that the term "orphan" was used in the Constitution in its popular sense as embracing a motherless as well as a fatherless child.

It was undoubtedly so used both in statutes which preceded and in those which succeeded the adoption of that Constitution; and it was universally treated as bearing that construction from 1832 to 1860, when for the first time a different rule was announced, seemingly without much consideration, in the case of *Stewart* v. *Morrison*, 38 Miss. 417.

Believing, therefore, that Spiva M. Wells was the legal guardian of his children by virtue of his appointment by the Probate Court of Hinds County, I concur in the opinion that the plaintiffs' right of action was barred by the provisions of § 2173 of the Code of 1871, and that the judgment should be

*Reversed.*

The plaintiff in error, after the judgment was reversed, moved the court to grant a writ of restitution to the possession of the lands from which he had been evicted under a writ of *habere facias possessionem*, issued on the judgment of the Circuit Court.

*M. Green*, for the motion.

*E. E. Baldwin*, contra.

SIMRALL, C. J., delivered the opinion of the court on the motion.

A motion has been submitted to award the writ of restitution, on the allegation that the defendant Hall has been turned out of possession under a writ of *habere facias possessionem*. There is no evidence or information in the transcript on the subject.

The reversal of the judgment confers on the defendant the right to be restored to whatever has been taken from him under stress or compulsion of process before the reversal, whether it be money or property. The law raises an obligation on the part of the plaintiff who has received the benefit of the erroneous judgment to restore it to the party who has lost it. While that is so, it is well settled that whatever is done under execution would be valid. The sheriff could justify a seizure of property, and a stranger to the record and process would acquire a title at the sheriff's sale. *Philips* v. *Biron*, 1 Strange, 509. In such case the only remedy would be the recovery of the money from

the party to whom the sheriff had paid it. *Bank of United States* v. *Bank of Washington*, 6 Pet. 8, 15–17.

If in this case the record showed that the defendant had been ejected from the premises by process before the reversal, it would have been in the power of this court, and its duty, to have incorporated in its judgment an award of restitution. The Appellate Court has inherent power, upon reversal of a judgment for a chattel or for the possession of land, to award a restitution, and the issuance of execution therefor; under our practice, final process is ordinarily issued by the court of original jurisdiction, founded on the mandate of this court. This judgment, it seems, was not superseded; and the plaintiffs in the Circuit Court, it is suggested in the motion, enforced the judgment by final process. If that has been done, Hall, the plaintiff in error, ought to be restored to the possession. The only difficulty about the matter is, whether the relief should come from this court or the Circuit Court.

The authorities agree that the Appellate Court may award the writ if the case before it shows a privation of possession. If, however, that fact must be brought to the notice of the court by proof *dehors* the record, the method is to give the plaintiff below notice; and to that end the aggrieved party may take out *scire facias*, warning him to appear and show cause why he should not have the writ of restitution. 2 Tidd's Pr. 1033; *Cowden* v. *Hurford*, 4 Ohio, 375. In those systems where the Appellate Court, through its own process, carries out to full completion its own judgments, it might be proper to award the *scire facias*. But in this State the mandate goes from this court to the Circuit Court, and proper process is issued from that court. It seems to us that the better practice would be, in cases circumstanced like this, to sue out the *scire facias* returnable into that court, and, on proof of ejection from the land, to have a judgment awarding the writ of restitution.

> *We decline to grant the motion, leaving the party to pursue the course indicated.*