BURLEIGH, Executrix, etc., *v.* THE TOWN OF ROCHESTER.

(*Circuit Court, E. D. Wisconsin.* January, 1881.)

1. TOWN BONDS—BOARD OF SUPERVISORS—PRESUMPTION AS TO ISSUE.
    A statute provided that certain town bonds were to be signed by the chairman of the board of supervisors, and countersigned by the town clerk. *Held*, where such bonds appeared to have been issued in strict conformity with the requirements of the statute, that the presumption would be that they were issued under the authority of the board of supervisors.

2. SAME—NEGOTIABLE INSTRUMENTS.
    Certain instruments, not under seal, called "town of Rochester bonds," declared that the town had caused these presents to be signed by the chairman of the board of supervisors, and countersigned, as required, by the town clerk thereof: and the form of the obligation was that the town of Rochester is justly indebted and promises to pay to the order of the Fox River Valley Railroad Company the sum of $500, with interest as set forth in the coupons. *Held*, under the decisions of the supreme court of the United States, that these instruments were essentially promissory notes of the town of Rochester, and negotiable as such like ordinary promissory notes under the law merchant.

**3. SAME—VALIDITY—CHANGE OF JUDICIAL RULING.**

*Held, further*, that if such bonds constituted a valid contract when made, as the law and the constitution were then expounded by the supreme court of the state, that it did not cease to be such because the highest court of the state had afterwards changed its ruling.

*Gelpke v. City of Dubuque*, 1 Wall. 175.

**4. WISCONSIN—STATUTE OF LIMITATIONS.—[ED.**

DRUMMOND, C. J. The law and facts of this case, by stipulation between the parties, have been left to the court. The suit was originally brought in the state court, and transferred to this court. It is an action on four bonds of $500 each, numbered 5, 6, 7, and 8, issued by the defendant, and made payable to the Fox River Valley Railroad Company, on the first of November, 1856, under the authority of an act of the legislature of March 15, 1856, and found in chapter 138 of the Local and Private Laws of Wisconsin of that year. That act authorized several towns in the county of Racine, Rochester among others, to subscribe to the capital stock of the Fox River Valley Railroad Company, and pay for the same, in the bonds of the town,—the town of Rochester,—the sum of $15,-000. The only objection taken to the bonds as not being in accordance with the statute is that they do not appear to have been issued by the board of supervisors. The seventh section of the statute declared that the bonds were to be signed by the chairman of the board of supervisors, and countersigned by the town clerk; and these bonds appear to be strictly in conformity with the requirements of the statute; and the presumption must be that they were issued under the authority of the board of supervisors.

John M. Thompson was a contractor on the railroad, and these bonds were indorsed and transferred to him by the railroad company in payment for work done upon the road. There is much conflict in the testimony as to the subsequent disposition and ownership of these bonds. They were at one time held by the Bank of Alfred, Maine, as collateral security for a loan made to Thompson; and in consequence of that indebtedness being discharged or satisfied by Jeremiah M. Mason, the bonds appear to have come into his hands.

Although Thompson used the bonds as his own, and gave them as collateral security to the bank, he claims that they really belonged to his wife; and it appears from the testimony, oral as well as written, that in some transactions which she had with Mason she was regarded as the owner of the bonds. Thompson, who has been examined as a witness, claims that he or his family, his wife being dead, and he being her representative, still retains an interest in the bonds; but I think the weight of the evidence must be considered to be in favor of the conclusion that he and his wife parted with their interest in the bonds as early as 1868, and that the entire ownership of the bonds was in Mason when he transferred them to John H. Burleigh, through the agency of John Hall, in the fall of 1875.

Thompson insists that by an arrangement between himself and Mason, there still being a joint ownership between them in the bonds, they were transferred to Burleigh without his really having any interest in them, but simply for the purpose of their being in the hands of a *bona fide* holder, without any notice of the judicial proceedings which had taken place in relation to them in the courts of Wisconsin, to which reference will presently be made; but I think that the evidence in opposition to this claim of Thompson is so strong that the court must find that Burleigh became the real and not the mere colorable owner of the bonds. Mr. Hall states explicitly that as the agent of Mason he sold the bonds to Burleigh at 25 cents on the dollar, received the money, or its equivalent, and turned it over to Mason; and the fact that Burleigh, in July, 1876, paid to Mr. Carpenter $500, as his counsel, to prosecute the suit in his name on these bonds, and that there is no satisfactory evidence that this money was ever returned to him, either by Mason or Thompson, shows that he considered himself the real and not the nominal owner of the bonds. Whether Mason, at the time that he first purchased these bonds, knew what had taken place in the courts of Wisconsin, is not, perhaps, entirely clear. He says positively that he had no knowledge whatever upon the subject. Thompson asserts, with equal confidence, that he had full

knowledge. But, however this may be, there is no trustworthy evidence that this knowledge was brought home to Burleigh at the time he purchased the bonds in the fall of 1875.

A suit was commenced in 1859 in the circuit court of Racine county, Wisconsin, the object of which was to obtain a decree of the court declaring that these bonds were void, for the reason that at the time they were issued the law of 1856 had not been published, and therefore had not taken effect as an operative statute. In that case the town of Rochester, the Alfred Bank of Maine, and John H. Thompson were parties, service being had in Wisconsin upon the president of the bank and upon Thompson. They were made parties upon the ground that Thompson was the owner of the bonds, and had pledged them as collateral security for the payment of the debt which he owed to the Alfred Bank. The circuit court of Racine county decreed that the bonds were inoperative and void, and that decree was affirmed by the supreme court of Wisconsin in the case reported in 13 Wis. 432, (State v. McArthur.) This decree is admitted by the counsel of the plaintiff to be binding upon the Alfred Bank and upon Thompson, but it is denied that it is upon Mason or upon Burleigh. It should be stated that before Mason transferred these bonds to Burleigh he brought a suit in his own name in Wisconsin upon them, which was afterwards dismissed, for reasons which are not very fully or satisfactorily explained, although it is insisted by the defendant that the reason was because Mason was in no better condition in relation to these bonds than Thompson, as he had taken them with full knowledge of the decree of the Wisconsin courts.

Various defences have been set up in opposition to plaintiff's case. It is claimed, in the first place, that Burleigh was not the real owner, and that in any event he was only a part owner of these bonds, Thompson, or his family, being jointly interested with him; and under the laws of Wisconsin, which require that the party really in interest should only bring suit, the plaintiff's action is not maintainable; but, as already stated, this objection must fail, because, under the evidence

as the court finds it, neither Thompson nor his family had any interest in these bonds.

It is insisted, in the second place, that the court has no jurisdiction of the cause, that objection being taken for the first time on the hearing. It is said that although this action was transferred from the state to the federal court under the second section of the act of 1875, that the transfer could not have been made unless the court would have had jurisdiction under the first section of that act. But conceding, for the sake of the argument, that that is the true construction of the act of 1875, I am of the opinion that the instruments upon which this suit is brought are, under the decisions of the supreme court of the United States, essentially promissory notes of the town of Rochester, and negotiable as such like ordinary promissory notes under the law merchant. It is true that they are called "town of Rochester bonds," but they are not issued under the seal of the town, nor indeed is there any seal whatever. It is simply declared that the town has caused these presents to be signed by the chairman of the board of supervisors, and countersigned, as required, by the town clerk thereof, and the form of the obligation is that the town of Rochester is justly indebted and promises to pay to the order of the Fox River Valley Railroad Company the sum of $500, with interest as set forth in the coupons.

It is claimed, in the third place, that the judicial proceedings which have taken place in Wisconsin upon the bonds are conclusive upon the plaintiff, and that as the circuit and supreme courts of Wisconsin have found that they were invalid, this court must also so find. By the constitution of Wisconsin, in force at the time this statute became a law, it was required, before any general law took effect, that it should be published; and as there is nothing to show this law was published until the time certified by the secretary of state, on the third day of December, 1856, the argument is, and was, in the case already referred to, decided by the supreme court of Wisconsin, that this law had not taken effect. In view of this requirement of the constitution of Wisconsin, an act of the legislature had been passed, which was in force at the

time that the act of March 15, 1856, was passed, directing
the secretary of state and the attorney general to classify the
various laws; and, in pursuance of that requirement, the
secretary of state and the attorney general classified this law
as a local act, thereby not putting it in the class of general
laws, as named in the constitution of the state. But prior
to the decision of the case of *The Town of Rochester* v. *Alfred
Bank,* 13 Wis. 483, the supreme court of the state had held
that a case like this was a general law, and came within the
terms of the constitution. *State* v. *Leon,* 9 Wis. 279; *Clark*
v. *Janesville,* 10 Wis. 136. These decisions were followed in
the case decided upon these bonds. If this were an open
question, I should think there was great force in the position
originally taken by counsel in the Wisconsin cases, that a
law like this could hardly be said to be a general law within
the meaning of the constitution. It applied only to the
towns of Burlington, Rochester, Waterford, Norway, in the
county of Racine, and the town of Muskego, in the county of
Waukesha. But, however this may be, the question is
whether, under the case of *Havermeyer* v. *Iowa County,* 3
Wall. 294, the plaintiff is foreclosed by the decision of the
supreme court of Wisconsin in the case reported in 13 Wis.
483. In the *Havermeyer Case,* the supreme court decided
that, at the time these bonds were issued, the law, as held by
the supreme court of Wisconsin, was not a general law, and
so did not come within the language of the constitution; and
that the principle declared in the case of *Gelpke* v. *City of
Dubuque,* 1 Wall. 175, applied; and if these bonds consti-
tuted a valid contract, as the law and constitution were then
expounded by the supreme court of the state, that it did not
cease to be such because the highest court of the state had
afterwards changed its ruling; and, I must confess, it seems
to me, if the case of *Havermeyer* v. *Iowa County* was properly
decided, and if it is binding on this court, as of course it is,
it is conclusive of the question in this case, because every
point in controversy there was the same as here. The cases
which have already been referred to, in which the supreme
court of Wisconsin decided that a law like this was a general

law, have all been determined since these bonds were issued, and the supreme court of the United States held that the law, as expounded by the supreme court of Wisconsin in the case of *Hewett* v. *Town of Grand Chute*, (decided in 1858,) 7 Wis. 282, operated upon the contract in that case; and, if so, on the same principle it operated on these bonds in this case.

The statute of limitations has been pleaded to the coupons attached to these bonds as another defence. That is a matter clearly within the province of the state, and a statute of limitations upon an action at law becomes the law of the federal court in a case heard in a state where the statute operates. *Amy* v. *Dubuque*, 98 U. S. 470. This action was brought, and the summons served, on the twenty-fifth of August, 1879. As already stated, these bonds were issued on the first of November, 1856, and were payable on the first of November, 1876. The statute of Wisconsin passed in 1872, re-enacted in the Revised Code of 1878, in section 4222, declares that any action upon any bond, coupon, interest warrant, or other contract for the payment of money, whether sealed or otherwise, made or issued by any town, county, state, village, or school district in this state, shall·be brought within six years. Consequently, the limitation of the statute operates upon all coupons due prior to the twenty-fifth of August, 1873, the statute declaring that a suit shall be deemed to be commenced when a summons is served on the defendant. So that the statute would not, of course, run against the bonds, they not being payable until November 1, 1876, but it would run against all the coupons except the last four, to-wit, those payable on the first of November, 1873, 1874, 1875, and 1876.