MEMORANDUM OPINION AND ORDER
 

 BARBOUR, Chief Judge.
 

 This cause is before the Court on the following motions: (1) Motion for Summary Judgment of the Defendants Board of Education of Lamar County, Mississippi, Emil Pav, Superintendent of Education of Lamar County, Mississippi, the Board of Education of Marion County, Mississippi, William Davis, Superintendent of Marion County, Mississippi, the Board of Education of Hancock County, Mississippi, and Myrna L. Bourgeois, Superintendent of Education of Hancock County, Mississippi (hereinafter collectively referred to as “the Joint Defendants”); (2) Motion for Partial Summary Judgment Against All Defendants of the Plaintiff Exxon Corporation (“Exxon”); (3) Motion for Summary Judgment, or in the Alternative Motion to Dismiss of the Defendants Natchez-Adams County School District, Natchez-Adams County Board of Education and M.R. Buckley, Superintendent of Education of Adams county, Mississippi, succeeded in office by Dr. Willie Hoskins, Interim Superintendent of Education of Natchez-Adams School District (hereinafter collectively referred to as “the Natchez-Adams Defendants”); (4) Motion to Strike Hearsay of Exxon; (5) Joint Defendants’ Motion to Strike Portions of the Affidavit of Exxon; and (6) Second Motion to Strike Hearsay of Exxon. The Court finds that: (1) the Motion for Summary Judgment of the Joint Defendants is well taken and should be granted; (2) the Motion for Partial Summary Judgment Against All Defendants of Exxon is not well taken and should be denied; and (3) the Motion for Summary Judgment or in the Alternative to Dismiss of the Natchez-Adams Defendants should be granted.
 

 Regarding the Motions of Exxon to Strike Hearsay, the Court finds that no ruling is necessary on these two motions because the material to .which Exxon objects was not necessary to and had no bearing upon the decision of this Court on the dispositive motions filed in this action. The Court does not deny these motions as they may become relevant later in this cause of action on the issue of estoppel.
 

 As for the Joint Defendants’ Motion to strike portions of certain affidavits submitted by Exxon, again there is no need to rule on this motion at the present time because the material to which the Joint Defendants object was not necessary to the decision reached by this Court. The Court finds that the argument of the Joint Defendants is well taken that the opinion of various state officials concerning whether section 211 of the Mississippi Constitution applied -.-to oil and gas leases is irrelevant in determining whether that section of the constitution actually prohibited such leases. “It is universally accepted that the highest judicial tribunal of a state is the paramount authority for the interpretation of that state’s constitution, subject only to the Constitution of the United States.”
 
 Alexander v. State ex rel. Attain,
 
 441 So.2d 1329, 1333 (Miss.1983). Thus, “ ‘[a] judgment by the highest Court of a state as to the meaning and effect of its own constitution is decisive and controlling everywhere.’ ”
 
 Id.
 
 (quoting
 
 Highland Farms Dairy v. Agnew,
 
 300 U.S. 608, 613, 57 S.Ct. 549, 552, 81 L.Ed. 835 (1937)). In
 
 Chevron U.S.A., Inc. v. State,
 
 578 So.2d 644, 649 (Miss.1991), the Mississippi Supreme Court held that section 211 of the Mississippi Constitution applied to oil and gas leases: “Constitutional realities dictate that when the subject lease was entered, sixteenth section lands could not be leased for a period to exceed twenty-five years.” The Court finds that this interpretation is the only interpretation of the Mississippi Constitution which is binding upon this Court. The Court will address the “rule of practical construction” argument asserted by Exxon in further detail below. Once again, the Court is not ruling on the merits of the Motion to Strike Portions of Affidavits because this issue may become relevant later in this cause of action on the issue of estoppel.
 

 I.
 
 Background
 

 Exxon filed suit on August 18, 1992, against the Boards of Education and the Superintendents of Education of four south Mississippi counties: Lamar, Marion, Hancock and Adams.' Exxon is seeking declaratory, injunctive and/or monetary relief in its actions against these Defendants. Exxon has also filed a Motion for Partial Summary
 
 *483
 
 Judgment against all Defendants requesting that the leases which are the subject of this action, as described in more detail below, be declared valid, that the subject leases remain in effect and that the Defendants be enjoined from terminating the leases. Alternatively, Exxon requests that the Court order just compensation for the taking of its alleged vested property rights in the leases. As noted previously, the Lamar, Marion and Hancock Defendants, the “Joint Defendants,” have filed a joint Motion for Summary Judgment, and the “Natchez-Adams Defendants” have joined in the motion filed by the Joint Defendants, and have filed a separate Motion for Summary Judgment.
 

 The leases which are the subject of this action are various oil, gas and mineral leases, executed between 1943 and I960, on sixteenth section lands which are owned by the State of Mississippi and managed by the Defendants.
 
 [1]
 
 All of the leases in question were executed pursuant to Section 6600 of the Mississippi Code of 1942,
 
 [2]
 
 which is currently codified as Miss.Code Ann. § 29-3-99. All of the subject leases were executed by the various Defendants for a primary term of six years and so long thereafter as oil, gas or other minerals continued to be produced from the lands covered by the leases.
 

 The following leases are at issue in this action:
 

 (1)The Lamar County lease, executed on June 8, 1943, by the Board of Supervisors of Lamar County, Mississippi, acting on behalf of the county, in favor of J.B. May-field, as Lessee, covering Section 16, Township 1 North, Range 16 West, in Lamar County, Mississippi. On October 15, 1943, J.B. Mayfield assigned the lease to Humble Oil and Refining Company (“Humble”), and Exxon is the successor of Humble.
 
 [3]
 

 (2) The Adams County lease, executed on November 10, 1950, by the Board of Supervisors of Adams County, Mississippi, acting on behalf of the county, in favor of Humble, as Lessee, covering Section 5, Township 7 North, Range 3 West, in Adams County, Mississippi. ■ This lease covers sixteenth section lieu land, which is considered for all relevant purposes as sixteenth section land. Exxon is the successor of Humble on this lease.
 
 [4]
 

 (3) The Marion County lease, executed on May 2, 1950, by the Board
 
 of
 
 Supervisors of Marion County, acting on behalf of the county, in favor of Humble, as Lessee, covering Section 16, Township 2 North, Range 18 West, in Marion County, Mississippi. Exxon is the successor of Humble on this lease.
 

 (4) The Hancock County lease, executed on February 23, 1960, by the Board of Supervisors of Hancock County, Mississippi, acting on behalf of the county, in favor of J.R. Murphéy, as Lessee, covering Section 16, Township 8 South, Range 15 West, in Hancock County, Mississippi. J.R. Murphey assigned this lease to Humble on February 29, 1960, and Exxon is the successor of Humble.
 
 [5]
 

 
 *484
 
 Exxon asserts that there has’ been continuous production of oil and/or gas from the lands covered by the subject leases since the end of the primary terms of the leases, and that by the terms of the leases, the leases remain in full force and effect. The Defendants assert that the various leases terminated by operation of law twenty-five year's from the date of execution of the respective leases because section 211 of the Mississippi Constitution, at the time the leases were executed, prohibited any leases of sixteenth section lands for a term longer than twenty-five years. Defendants also do not concede that the lands subject to these leases have been in continuous production of oil and/or gas since the expiration of the primary term of the leases.
 

 II.
 
 Summary Judgment Standard
 

 Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories; and admissions -on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language “mandates the entry of summary judgment, after adequate time for discovery and upon motion,-against a party who fails to make a sufficient showing to establish the existence of an essential element to that party’s case, and on which that party will bear' the burden of proof at trial.”
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);
 
 see also Moore v. Mississippi Valley State Univ.,
 
 871 F.2d 545, 549 (5th Cir.1989);
 
 Washington v. Armstrong World Indus.,
 
 839 F.2d 1121, 1122 (5th Cir.1988).
 

 The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact.
 
 Celotex, 477
 
 U.S. at 323, 106 S.Ct. at 2552. The movant need not, however, support the motion with materials that negate the opponent’s claim.
 
 Id.
 
 As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of-evidence to support the non-moving party’s claim.
 
 Id.
 
 at 323-324, 106 S.Ct. at 2553. The non-moving party must then go beyond the pleadings and designate “specific facts showing that there is a genuine issue for trial.”
 
 Id.
 
 at 324, 106 S.Ct. at 2553.
 

 Summary judgment can be granted only if everything in the record demonstrates, that no genuine issue of material fact exists. The district court, therefore, must not “resolve factual disputes by weighing conflicting-evidence, ... since it is the province of the jury to assess the probative value of the evidence.”
 
 Kennett-Murray Corp. v. Bone,
 
 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial.
 
 National Screen Serv. Corp. v. Poster Exchange, Inc.,
 
 305 F.2d 647, 651 (5th Cir.1962).
 

 All of the parties in this action agree that the current motions for summary judgment are actually motions for partial summary judgment to determine the validity, of the leases in question. The Court will not address the issue of estoppel until further discovery has taken place.
 

 III.
 
 Analysis
 

 A.
 
 Motion of the Natchez-Adams Defendants
 

 The Natchez-Adams Defendants have joined in the Motion for Summary Judgment of the Joint Defendants and have also styled their motion as a Motion to Dismiss for lack of subject matter jurisdiction. According to these Defendants, the Chancery Court of Adams County is the proper forum for this suit. As early as 1980, the Board of Supervisors of Adams County notified Humble that the Adams County lease had expired by operation of law. Exxon, as successor of Humble, began a series of correspondence with these Defendants concerning the lease. By May 11, 1983, Exxon declined to renegotiate the Adams County lease, claiming that the existing lease was still valid and not contrary
 
 *485
 
 to the Mississippi Constitution. On June 27, 1983, the Natchez-Adams Special Municipal Separate School District filed a Complaint against Exxon in the Chancery Court of Adams County, Mississippi (“the Chancery Court proceeding”). The case was removed by Exxon to the United States District Court for the Southern District of Mississippi, Western Division, until May 3, 1984, when a Consent Order of Remand to' the Chancery Court of Adams County, Mississippi, was entered by this Court.
 

 During this time, Chevron U.S.A., Inc. filed its suit in the Chancery Court of Jones County, Mississippi, to confirm title to an oil and gas lease, dated February 4, 1957, on Jones County sixteenth section land. While the
 
 Chevron
 
 case was pending, all parties in the Adams County case agreed to hold that case in abeyance pending judicial resolution of the
 
 Chevron
 
 case. The Mississippi Supreme Court rendered the final decision in
 
 Chevron
 
 on the Petition for Rehearing on April 3, 1991.
 
 See Chevron U.S.A., Inc. v. State,
 
 578 So.2d 644 (Miss.1991).
 

 The current action was filed by Exxon on August 18, 1992, and the Natchez-Adams Defendants answered, raising the jurisdiction defense which they argue in this motion. On September 4, 1992, the Natchez-Adams Defendants filed a Motion to Amend the Complaint in the Chancery Court proceeding, which the Chancellor allowed. Subsequently, on October 15, 1992, Exxon filed a Motion to Stay the Chancery Court Proceedings, and after a hearing on the motion, the 'Chancery Court granted the Motion. On December 3, 1992, the Chancellor entered a Memorandum Opinion and Order Granting Stay of Proceeding.
 
 See
 
 Exhibit P-83 to the Motion for Summary Judgment of Exxon. The learned Chancellor listed twenty reasons why the Chancery Court proceeding should be stayed in its entirety.
 
 See
 
 Memorandum Opinion and Order at 7-8. The Chancery Court reasoned that Exxon should have the right to have its federal claims heard in federal court, citing
 
 England v. Louisiana State Bd. of Medical Examiners,
 
 375 U.S. 411, 416-17, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964), and that any action taken by a state court on the federal constitutional claims of Exxon would not be conclusive or binding on the federal court, citing
 
 Howard v. Ladner,
 
 116 F.Supp. 783, 792 (S.D.Miss.1953). Without citing all twenty of the reasons given by the Chancery Court for staying the proceedings in that court, this Court finds that the reasoning of the Chancellor was sound and adopts the Memorandum Opinion and' Order of the Chancery Court. This Court will not engage in a judicial ping-pong match with the Chancery Court of Adams County, Mississippi. The Court finds that Exxon has a right to have its federal constitutional claims heard in a federal court.
 

 
 *437
 
 The Owners shall have a lien upon all cargoes and all sub-freights for any amounts due under this Charter, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in ad-
 
 *438
 
 vanee and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Vessel (See Cls. 41).
 

 
 *485
 
 The Natchez-Adams Defendants also argue that the Declaratory Judgment Act is procedural only and does not extend to federal jurisdiction where the federal claims of Exxon arise only as a defense to a state created action. The Court will address this issue later in the opinion, as the Joint Defendants advance this same argument in their motion. Thus, for the reasons set forth above, the Court finds that the claims of Exxon against the Natchez-Adams Defendants should not be dismissed from this action because of lack of jurisdiction. For the reasons set forth below, however, the Motion for Summary Judgment filed by the Joint Defendants and joined by the Natchez-Adams Defendants should be granted.
 

 B.
 
 The Chevron Decision
 

 The reason for the present action in this Court is the 1991 decision by the Mississippi Supreme Court in
 
 Chevron U.S.A., Inc. v. State,
 
 578, So.2d 644 (Miss.1991). That court held that section 211 of the Mississippi Constitution of 1890 limits the terms of oil, gas and mineral leases on sixteenth section and lieu lands to a maximum of twenty-five years, regardless of production in the secondary term of the lease.
 
 [6]
 
 The Court relied
 
 *486
 
 upon language in
 
 Pace v. State ex rel. Rice,
 
 191 Miss. 780, 4 So.2d 270 (1941) in reaching its decision. The
 
 Pace
 
 court noted, in dicta according to Exxon, that “[a]t most the lessee could only be prevented from asserting rights under such a lease after the expiration of the constitutional limitation of twenty-five years.”
 
 Id.,
 
 4 So.2d at 279.
 
 [7]
 
 Apparently relying upon this language and the language of section 211, the
 
 Chevron
 
 court concluded that the lessee “was on notice that its lease expired after twenty-five years.” 578 So.2d at 650. The
 
 Chevron
 
 court further reasoned that:
 

 The judiciary of this state is subservient to the Mississippi Constitution. Perhaps the most fundamental concept of constitutional superiority is that constitutional rights cannot be created by statutes or rules, nor can they be abolished by executive or judicial action.
 

 Chevron,
 
 578 So.2d at 649 (citations omitted).
 

 This Court is
 
 Erie
 
 bound to follow the
 
 Chevron
 
 decision. That decision applies retroactively to all similarly situated oil and gas lessees of sixteenth section lands.
 
 See State ex rel. Moore v. Molpus,
 
 578 So.2d 624, 642 (Miss.1991). Thus, any oil, gas and/or mineral leases for sixteenth section land, executed before the 1992 amendment of section 211, are subject to the ruling in
 
 Chevron,
 
 whether or not those leases have expired.
 
 See id.
 
 at 643 (noting that “constitutional amendments and statutory enactments have prospective force only, ‘unless a contrary intention is manifested by the clearest and most positive expression’ ”) (citations omitted). In the 1992 amendment of section 211, the following language was added:
 

 Notwithstanding any limitation on the terms of leases provided in subsection (1) of this section, the Legislature may provide, by general law, for leases on liquid, solid or gaseous minerals with terms coextensive with the operations to produce such minerals.
 

 Miss. Const. art. 8, § 211(2). This language cannot be construed to apply to leases in existence at the time of its adoption because it is not a clear and positive expression of such an intent. Thus, there is no escaping the fact that
 
 Chevron
 
 applies retroactively to the leases which are the subject of this case.
 

 The
 
 Chevron
 
 court noted that Miss. Code Ann. § 29-3-63 would provide some relief to oil and gas lessees affected by its decision:
 

 § 29-3-63 ..., which provides the holder of a lease of sixteenth section land with a prior right, exclusive of all other persons, to re-lease or extend an existing lease, certainly diminishes the perceived harsh consequences which might result from the enforcement of § 211 against all oil, gas and mineral leases of sixteenth section land.
 

 Chevron,
 
 578 So.2d at 650. This section of the Mississippi Code was amended in 1992 to address a question left open by
 
 Chevron
 
 of whether lessees whose leases had expired by operation of law would have a prior right to re-lease pursuant to § 29-3-63. That section now provides, in relevant part, as follows:
 

 (4) Where used in this section and Section 29-3-65, the term “oil and gas lease” or “oil, gas and mineral lease” shall include all leases originally executed pursuant to Section 29-3-99.
 

 (5) The right to re-lease an oil, gas and mineral lease provided in subsection (3) above extends to oil, gas and mineral leases which have already expired as of the effective date of this section, subject to an accounting for production from the date of
 
 *487
 
 the lease expiration to the date of the replacement lease authorized herein.
 

 Miss.Code Ann. § 29 — 3—63(4)—(5) (Supp. 1993). The Court finds that this language is a clear expression of intent that that statute should apply retroactively to the leases which are the subject of this case.
 
 See Molpus,
 
 578 So.2d at 643. Therefore, Exxon should have the opportunity, pending the final outcome in this action, to renegotiate the subject leases, subject to an accounting for production.
 

 C.
 
 The Rooker/Feldman Doctrine
 

 The Defendants argue that the
 
 Rook-er/Feldman
 
 doctrine, which provides that federal district courts lack jurisdiction to review state court decisions as an appellate court, precludes the claims of Exxon in this Court. The doctrine originated in
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and was reaffirmed in
 
 District of Columbia Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In
 
 Feldman,
 
 the United States Supreme Court held that “a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court.”
 
 Id.
 
 at 482, 103 S.Ct. at 1315. That Court also noted, in a footnote, the relationship between the claims presented to the state court and the federal district court:
 

 If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court’s denial in a judicial proceeding of a
 
 particular plaintiffs
 
 [claim], then the District Court is in essence being called upon to review the state-court decision. This the District Court may not do.
 

 Id.
 
 at 482 n. 16, 103 S.Ct. at 1315 n. 16 (emphasis added).
 

 The United States Court of Appeals for the Fifth Circuit has followed the
 
 Rooker/Feldman
 
 doctrine in several eases. In
 
 Reynolds v. State of Georgia,
 
 640 F.2d 702, 704 (5th Cir.),
 
 cert. denied,
 
 454 U.S. 865, 102 S.Ct. 326, 70 L.Ed.2d 165 (1981), the plaintiff sought review in a United States District Court of a Georgia state court decision. She alleged that she was not seeking appellate review, but that she had a “new and distinct claim caused by the [state court] decision.”
 
 Id.
 
 at 705. Despite the artful wording of the Complaint, the court found that the plaintiff was seeking “essentially an appellate review” of the state court decisions against her.
 
 Id.
 
 at 707. As such, the court concluded that it was barred from considering such claims by the
 
 Rooker/Feldman
 
 doctrine.
 
 Id.
 
 This doctrine applies even when the state court decision is challenged as unconstitutional.
 
 Williams Natural Gas Co. v. City of Oklahoma City,
 
 890 F.2d 255, 264-65 (10th Cir.1989), ce
 
 rt. denied,
 
 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990).
 

 Defendants assert that the
 
 Reynolds
 
 case is a “mirror image of Exxon’s complaint” because Exxon is essentially asserting that an erroneous decision by the Mississippi Supreme Court is a violation of the taking and due process clauses of the Constitution. Memorandum Brief in Support of Motion for Summary Judgment at 10. The Court finds that this argument is not well taken. In all of the controlling cases in this circuit concerning the application of the
 
 Rooker/Feld-man
 
 doctrine, the rule has been applied where the same plaintiff involved in a state court suit then filed suit in a federal district court. In the present case, Exxon was not a party to the
 
 Chevron
 
 decision in the state court. While Exxon filed briefs as amicus curiae in the
 
 Chevron
 
 action, this did not give Exxon the right to appeal that decision to the United States Supreme Court. Furthermore, Exxon did hot participate in that action at the trial court level by calling witnesses or presenting arguments. Exxon is correct in its assertion that this Court has original jurisdiction pursuant to diversity of citizenship under 28 U.S.C. § 1332 and because Exxon has asserted rights arising under certain amendments to the United States Constitution which raise federal questions under 28 U.S.C. § 1331. For these reasons, the
 
 Rooker/Feldman
 
 doctrine does not preclude the action brought by Exxon in this Court.
 

 D.
 
 Discretionary Jurisdiction
 

 The Defendants urge this Court to refrain from exercising jurisdiction over this matter, asserting that even though the Court
 
 *488
 
 may have jurisdiction of the action under the Declaratory Judgment Act,
 
 [8]
 
 the Court is under “no compulsion to exercise that jurisdiction.”
 
 Brillhart v. Excess Ins. Co.
 
 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Defendants correctly note that the Declaratory Judgment Act is procedural ■ only and does not extend federal court jurisdiction.
 
 Lowe v. Ingalls Shipbuilding,
 
 723 F.2d 1173, 1179 (5th Cir.1984). Defendants are incorrect, however, in their assertion that subject matter jurisdiction is lacking in this case.
 

 In
 
 Franchise Tax Board v. Construction Laborers Vacation Trust,
 
 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the United States Supreme Court addressed the issue of subject matter jurisdiction in the federal courts:
 

 [A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, ... or that a federal defense the defendant may raise is not sufficient to defeat the claim.... “Although such allegations show that very likely, in the course of the litigation, a question under the constitution would arise, they do not show that the suit, that is, the plaintiffs original cause of action, arises under the Constitution.”
 

 Id.
 
 at 10, 103 S.Ct. at 2846-47 (citations omitted). Thus, under the well-pleaded complaint rule, federal substantive law must form “an essential element of the cause of action itself, as distinguished from possible defenses thereto.....”
 
 Lowe,
 
 723 F.2d at 1179. Therefore, if a plaintiff has asserted a cause of action on the face of the complaint which arises under the Constitution or laws of the United States, then the federal courts have subject matter jurisdiction.
 

 This case is similar to
 
 Stone & Webster Eng’g Corp. v. Ilsley,
 
 690 F.2d 323, 325 (2d Cir.1982),
 
 aff'd sub nom. Arcudi v. Stone & Webster Eng’g Corp.,
 
 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), where an employer brought a declaratory judgment action to determine whether a Connecticut statute was preempted by the Employee Retirement Security Act of 1974 (“ERISA”). The defendants in that case asserted arguments, similar to those asserted by the Defendants in this action, that the claims of the plaintiff could not be brought under the Declaratory Judgment Act because the Act does not confer federal subject matter jurisdiction.
 
 Id.
 
 at 327. The court concluded that:
 

 Here not only is a right being asserted on the face of the complaint, but an injunction is also being affirmatively sought to prevent interference with that right. This claim raises federal question jurisdiction .... Regardless of whether ... the equitable considerations necessary to support the issuance of an injunction are sufficiently alleged, jurisdiction under § 1331(a) clearly exists since a declaratory judgment action may be entertained even where further relief is unavailable. 28 U.S.C. § 2201 (1976).... The declaratory claim asserted is not merely a defense, but affirmative and coercive relief sought by way of injunction.
 

 Id.
 
 at 327-28 (citations omitted).
 

 Similarly, in. this case, Exxon has asked for coercive relief, by way of injunction and in seeking damages. Exxon has asserted claims based upon the Fifth and the Fourteenth Amendments to the United States Constitution. Whether such relief is ultimately granted is not an issue in determining whether jurisdiction is proper and should be exercised by this Court. The Court finds that Exxon has sufficiently asserted claims arising under the Constitution of the United States such that jurisdiction is proper under 28 U.S.C. § 1331. Because this Court has original federal subject matter jurisdiction, the Court finds that the claims of Exxon are not based solely on the Declaratory Judgment Act, which is procedural only.
 

 E.
 
 Does Exxon Have Vested Rights in the Oil, Gas and/or Minerals Which are the Subject of the Leases?
 

 1.
 
 Under the Leases
 

 Exxon argues that it has vested property rights under the subject leases because an oil and gas lease is a sale of the minerals under the land, rather than a lease in the ordinary
 
 *489
 
 sense of the word. Thus, Exxon asserts that upon acquiring the leases, it acquired title to the minerals under the sixteenth section lands, and the right to enter upon such lands and use so much of the land as is reasonably necessary to exercise its rights under the leases to explore for, extract and market oil, gas and other minerals. Exxon cites numerous Mississippi and federal cases to support the arguments set forth above. These arguments are virtually the same as the analysis employed by Justice Robertson in his dissent from the
 
 Chevron
 
 decision:
 

 Unless by contract parties provide otherwise, this state’s law declares an oil and gas lease as a sale of an immediate posses-sory interest in the oil, gas and other minerals which may be produced from under a certain tract of land, subject to specific conditions, together with an easement across the land for ingress and egress and drilling and producing operations.
 

 Chevron,
 
 578 So.2d at 655 (Robertson, J., dissenting).
 

 The problem with Justice Robertson’s argument and the arguments advanced by Exxon is that the Mississippi Supreme Court chose not to accept those arguments because they conflict with section 211 of the Mississippi Constitution. That court held that “[i]t is obvious that Section 211 limits sixteenth section land leases (including mineral leases) to a maximum term of twenty-five years.”
 
 Chevron,
 
 578 So.2d at 649. The
 
 Chevron
 
 court discussed the economic realities of oil and gas leasing and how those realities conflicted with the constitutional limitation of section 211:
 

 The economic realities (and the hit and miss nature of oil and gas exploration in general) dictate that to maximize profits, the mineral lessee must be allowed to maintain the lease for an indefinite period of time. This is where the economic realities of oil, gas and mineral leases of sixteenth section land conflict with the constitutional reality of § 211.
 

 Id.
 
 at 648. That court chose not to balance that conflict, instead holding that the Mississippi Constitution is binding and can only be changed through constitutional amendment by the people of Mississippi.
 
 Id.
 
 at 649. This Court is
 
 Erie
 
 bound to follow the decision of the Mississippi Supreme Court on this issue. Therefore, the Court finds that Exxon only had vested property rights in the subject leases for a period of twenty-five years from the date of the execution of the leases. This finding is consistent with the holding in
 
 Chevron.
 

 2.
 
 Under the Statutes
 

 Exxon alleges that it has vested property rights in the leases under Section 6600 of the Mississippi Code of 1942 and its successor statute, Miss.Code Ann. § 29-3-99 (1972). Each of these statutes allowed the entities in charge of leasing sixteenth section lands to lease those lands for oil, gas and mineral exploration:
 

 [S]aid lands shall not be leased for oil, gas and other minerals for a primary term of more than six years and so long thereafter as oil or gas or other minerals is being produced from said lands....
 

 Miss.Code Ann. § 6600 (1942). The newer version of the statute is essentially the same except it allows for a primary term of only five years.
 
 See
 
 Miss.Code Ann. § 29-3-99 (1972).
 
 [9]
 
 Exxon correctly asserts that a statute enacted by the state legislature is presumed to be constitutional, and that such a presumption can only be overcome by proof showing unconstitutionality beyond a reasonable doubt.
 
 Vance v. Lincoln County Dep’t of Pub. Welfare,
 
 582 So.2d 414, 419 (Miss.1991);
 
 see also Mississippi Power Co. v. Goudy,
 
 459 So.2d 257, 263 (Miss.1984);
 
 Loden v. Mississippi Pub. Serv. Comm’n,
 
 279 So.2d 636, 640 (Miss.1973). While all of these statements of the law are correct, none of them convey to Exxon a property right in the subject leases.
 

 The one statement of the law which Exxon fails to acknowledge is that statement pronounced by the
 
 Chevron
 
 court holding that leases such as the ones in this case could not be valid for longer than twenty-five years
 
 *490
 
 because section 211 of the Mississippi Constitution prohibits leases for a longer period.
 
 [10]
 
 578 So.2d at 649. Furthermore, the Mississippi Supreme Court is the “paramount authority for the interpretation” of the Mississippi Constitution.
 
 Alexander,
 
 441 So.2d at 1333. The
 
 Chevron
 
 decision, though not explicitly, declared that the statute authorizing leases for a period longer than the constitution allows must be invalid.
 
 See Chevron,
 
 578 So.2d at 652 (Robertson, J., dissenting) (noting that “[w]e decide today that the lease must be stricken, and when we strike the lease, we strike the statute as' well”). Therefore, the statutes which Exxon claims convey a vested property right in the leases cannot possibly convey such a right if declared by the highest court in the state to be unconstitutional. Because of the decision in
 
 Chevron,
 
 this Court must find that the statutes in question in this case did not convey any vested property right to Exxon, except for a period of twenty-five years from the date of execution of the leases.
 

 3.
 
 The Dantzler Rule of Property
 

 In the early case of
 
 Yazoo & M.V.R. Co. v. Adams,
 
 81 Miss. 90, 32 So. 937 (1902), the Mississippi Supreme Court described the concept of a “rule of property.” “A ‘rule of property’ is a ‘settled legal principle governing the ownership and devolution of property.’ ”
 
 Id.,
 
 32 So. at 946. According to Exxon, a rule of property existed at the time Exxon or its predecessors acquired the subject leases. The
 
 Yazoo
 
 court explained the significance of such a rule of property:
 

 The acquiring of the ownership of property is always accompanied with the vesting of rights under and pursuant to the then existing law as declared by the supreme court of the state. This law so declared remains a rule of property until that law shall be changed by the state supreme court overruling or modifying such prior decision, in which case the rule of property would be changed to correspond with the latest utterance of the supreme court upon the subject. This change in the rule of property would only affect transactions occurring subsequent to such change in the decision of the state supreme court.
 

 Id.
 
 Thus, according to Exxon, if a rule of property existed at the time the leases were acquired, then that rule gave Exxon a vested property interest in the leases. Such an interest could not be taken away by a subsequent pronouncement by the state court, such as in
 
 Chevron,
 
 because such a “change in the rule of property would only affect transactions occurring subsequent to such change in the decision of the state supreme court.”
 
 Id.
 

 Exxon fails to note, however, the very definition of a “rule of property.” The
 
 Yazoo
 
 court explained the meaning of the phrase “settled legal principle”:
 

 This principle can be settled only by the supreme court of the state and its utterances, in cases pending before it involving the title to property, construing statutes or constitutional provisions, [which] have the effect of establishing a rule of property
 
 to the extent only that the particular statute or constitutional provision was in that case involved, or necessarily considered and determined by the court in the case then pending before it;
 
 and such a rule of property, when so established, becomes and remains the settled legal principle governing the acquisition and title to property, to which construction is applicable, so long as such decision remains unreversed by the supreme court giving such construction.
 

 Id.
 
 (emphasis added). Therefore, Exxon must show that the particular issue involved in this case has been construed by the Mississippi Supreme Court in a prior decision of that court. The specific issue here is whether the
 
 Chevron
 
 decision, holding that section 211 of the Mississippi Constitution limits the terms of oil and gas leases to a period of twenty-five years, was a decision which effected a change in the law of the state as it had been pronounced by the Mississippi Supreme Court on prior occasions.
 

 Exxon asserts that the Mississippi Supreme Court, in
 
 Dantzler Lumber Co. v. State,
 
 97 Miss. 355, 53 So. 1 (1910), estab
 
 *491
 
 lished a rule of property which is applicable to the subject leases. In
 
 Dantzler,
 
 the state challenged the sale of timber, by a county, from sixteenth section land, claiming that such a sale violated the prohibition in section 211 against selling sixteenth section lands. The court concluded that the prohibition against the sale of sixteenth section lands did not prohibit the sale of timber from those lands:
 

 The word “lands,” therefore, was used in that restricted sense in which it is so frequently used in common parlance, meaning, not the soil and everything above and below it, but simply the soil itself. The prohibition, therefore, extends only to the land, using the term in this restricted sense, and not to the timber growing on the land.
 

 Id.,
 
 53 So. at 2. According to Exxon, this holding established a rule of property which would allow the subject leases which were executed in this case to extend beyond the twenty-five year limitation in section 211. Exxon, however, ignores the rest of the holding in
 
 Dantzler
 
 which addresses this very issue.
 

 Since the boards of supervisors have the right to sell this timber, it follows that they have the right to permit the purchaser to enter upon the land and remove same, and necessarily to burden the land with the support thereof until removed;
 
 but they have no right or power to grant him an indefinite length of time for this purpose, for the reason that section 211 of the constitution prohibits the state from parting with the possession and control of sixteenth section lands except for a definite and comparatively short period of time.
 
 Such purchaser, therefore, can only be granted a reasonable time in which to remove the timber, during which, of course, he has the right to burden the land with the support thereof, and to that extent has a right to or interest in the land.
 

 Id.
 
 at 3 (emphasis added). The Defendants correctly note that “the ‘rule of property’ on which Exxon repeatedly relies is a two-edged sword: it allows the conveyance of the product but limits the time in which the product is to be removed.” Joint Defendants’ Reply Brief to Exxon’s Motion for Partial Summary Judgment and Rebuttal Brief in Support of Joint Defendants’ Motion for Summary Judgment at 28.
 

 Several years after
 
 Dantzler,
 
 the Mississippi Supreme Court again considered the issue of whether section 211 places a time limitation on the removal of timber from sixteenth section lands. In
 
 J.J. Newman Lumber Co. v. Robertson,
 
 131 Miss. 739, 95 So. 244, 246 (1923), the court quoted with approval the language from
 
 Dantzler
 
 stating that section 211 places a limit on the time during which a timber lessee could remove the timber from sixteenth section land. According to the
 
 Robertson
 
 court, “[t]he leasing of these sections in any of the various ways enumerated in the Constitution is a thing separate and apart from the sale of the timber.”
 
 Id.
 
 95 So. at 246. The court then explained the ruling in
 
 Dantzler:
 

 The period of time referred to in the Dantzler Lumber Co. Case, supra, can only be the maximum period of 25 years as provided in the constitution. Within this limit, in the exercise of good faith the board is the sole judge of what is a reasonable time. This inhibition merely provides for a time beyond which the board cannot burden an unleased sixteenth section.
 

 Id.
 

 If there was any doubt after
 
 Dantzler
 
 that section 211 applied to limit the time during which sixteenth section land could be leased for the removal of timber, the
 
 Robertson
 
 decision further clarified the meaning of section 211. Thus, Exxon cannot simply rely on the holding in
 
 Dantzler
 
 that the word lands means the land itself and not everything above and below it, and ignore the rest of the holding in that case that section 211 operates as a limitation on the time for removing timber from such land.
 

 The last case which is pertinent to the issue of whether a “rule of property” was in existence at the time of the execution of the subject leases is
 
 Pace v. State ex rel. Rice,
 
 191 Miss. 780, 4 So.2d 270 (1941). In
 
 Pace,
 
 the state granted a surface lease of certain sixteenth section lands to one party and an oil and gas lease in the same land to certain oil companies.
 
 Id.,
 
 4 So.2d at 272. The
 
 *492
 
 surface lessee claimed possession of the oil and gas rights because the lease granted to him did not expressly reserve these rights for the state.
 
 Id.
 
 The court held that the state did not transfer oil and gas rights to the surface lessee and that the oil and gas lessees had a right of entry.
 
 Id.
 
 at 275. The court stated:
 

 The trust devolving upon the state for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property.
 

 Id.
 
 at 277.
 

 The next issue raised by the surface lessee was that certain sections of the Mississippi Code of 1930 were unconstitutional because:
 

 they authorize (1) a sale of the minerals in situ, as a part of the realty, and (2) that the lease may under its terms remain in force so long as oil and gas are produced on the land, and therefore perhaps for longer than twenty-five years, all in violation of Section 211 of the state constitution which prohibits either a sale of any part of the sixteenth section lands or a lease thereof for a period of more than twenty-five years.
 

 Id.
 
 at 278. Relying on the now famous language in
 
 Dantzler,
 
 the court held that section 211 did not prohibit the sale of the minerals under the land because the word “lands” as used in section 211 meant only the soil itself and not everything above and below it.
 
 Id.
 
 (citing
 
 Dantzler,
 
 53 So. at 2). Regarding whether the terms of the lease violated section 211, the court concluded as follows:
 

 The second objection is obviated by Section 2118, Code of 1930, providing that conveyances purporting to convey or pass a greater estate than the grantor may lawfully convey or pass, shall operate to pass such a right or estate as the grantor may lawfully convey. At most the lessee could only be prevented from asserting rights under such a lease after the expiration of the constitutional limitation of twenty-five years.
 

 Id.
 
 at 279. It is this language from
 
 Pace
 
 which Exxon classifies as dicta and the Defendants refer to as the court reserving its ruling on the constitutionality of the statute authorizing a lease in excess of the twenty-five year limitation in section 211.
 

 The Court finds that the language set forth above from
 
 Pace
 
 is neither dicta nor a reservation of ruling on the question at issue in this case. The
 
 Pace
 
 court clearly stated that the state could not convey a greater estate than allowed by law. Such law included and includes section 211 of the Mississippi Constitution. The
 
 Pace
 
 court acknowledge this fact by stating that “[a]t most the lessee could only be prevented from asserting rights under such a lease after the expiration of the constitutional limitation of twenty-five years.”
 
 Pace,
 
 4 So.2d at 279. This language was quoted with approval in the
 
 Chevron
 
 decision. Thus, the Mississippi Supreme Court apparently did not classify such language as dicta or a reservation of ruling on the issue. A close reading of
 
 Dantzler, Robertson
 
 and
 
 Pace,
 
 make it clear to this Court that no rule of property was in existence at the time of the execution of the subject leases which would give Exxon a vested property right in the leases for a period exceeding the twenty-five year limitation in section 211.
 

 Exxon devotes a substantial amount of space to the argument that this Court should consider the position which the State of Mississippi took in
 
 Pace,
 
 by considering the brief filed in that case by the state. In that brief, the state advocated that the court should adopt the dissenting opinion of Justice McCowan in
 
 Gulf Refining Co. v. Terry,
 
 163 Miss. 869, 142 So. 457 (1932). In that same brief, the state adopted the brief filed by the oil and gas lessees in that same case. The Court finds that this argument is not a sound basis upon which to base a judicial opinion. This Court is bound by pronouncements of Mississippi law issued by the Mississippi Supreme Court in such cases as
 
 Pace
 
 and
 
 Chevron,
 
 not by opinions of or positions taken by other state officials or representatives.
 

 4.
 
 The Rule of Practical Construction
 

 The final argument advanced by Exxon concerning the vesting of rights is that such rights vested under the rule of practical construction. For this argument, Exxon relies
 
 *493
 
 primarily on
 
 Hall v. Wells,
 
 54 Miss. 289 (1877). In the opinion of Justice Simrall,
 
 [11]
 
 Exxon found the following language upon which to base this argument:
 

 [T]he principle is well settled that the practical construction given to a statute or Constitution by the officers of State, and acted upon by the people, is decisive.
 

 ... If the courts do place a different construction on a statute or Constitution than that long acquiesced in practically, contracts made or rights of property acquired before the change shall be respected.
 

 Id.
 
 at 301 (Simrall, J., seriatim opinion) (citations omitted). Exxon did not cite the following language from that same opinion:
 

 The rule was clearly announced and applied in
 
 Gelpcke v. Dubuque,
 
 1 Wall. 175, 206 [17 L.Ed. 520], “that if the contract when made was valid by the laws of the State, as then expounded by all departments of the government,
 
 and administered in its courts of justice,
 
 its validity and obligation cannot be impaired by any subsequent action of legislation, or decision of its courts altering the construction of the law.”
 

 Id.
 
 (emphasis added). Significantly, at the time these leases were executed, the judicial branch of government in the State of Mississippi did not agree with the construction placed upon the law by the legislature and the various officers in the executive branch of the government.
 
 See Pace,
 
 4 So.2d at 279 (noting that oil and gas lessees could be prevented from asserting rights under the lease after the expiration of the twenty-five year constitutional limitation);
 
 Robertson,
 
 95 So. at 246 (concluding that the board of supervisors could not burden sixteenth section land with a lease for longer than twenty-five years as provided by the constitution);
 
 Dantzler,
 
 53 So. at 3 (concluding that the board of supervisors could not grant a lessee an indefinite period of time in which to remove timber from sixteenth section land because of the limitations contained in section 211 prohibiting the state from parting with possession or control of such land for more than certain specified amounts of time). Furthermore, this Court does not view the
 
 Chevron
 
 decision as “altering the construction of the law.”
 
 Hall,
 
 54 Miss. at 301 (Simrall, J., seriatim opinion).
 

 The Court is not persuaded by the 1877 opinion of Justice Simrall which sets forth the “rule of practical construction” argued by Exxon.
 
 [12]
 
 As noted previously, the Mississippi Supreme Court is the “paramount authority” for interpreting the Mississippi Constitution.
 
 Alexander,
 
 441 So.2d at 1333.
 

 The definition of words used in statutes by the Legislature are made to aid the courts in interpreting the statutory intent of the Legislature. On the other hand, the meaning of words found in the Constitution are for the interpretation of the Supreme Court.
 
 Although definitions of words used by the Legislature may be persuasive in determining the meaning of words in the Constitution, they are not controlling.
 

 State ex rel. Muirhead v. State Bd. of Election Comm’rs,
 
 259 So.2d 698, 700 (Miss.) (emphasis added),
 
 cert. denied sub nom Muirhead v. Spann,
 
 409 U.S. 851, 93 S.Ct. 64, 34 L.Ed.2d 94 (1972). The Mississippi Supreme Court has further held that even though deference will be given to an agency interpretation of the constitution “in areas of administration by law committed to their responsibility, expertise and concern,” such
 
 *494
 
 deference' does not control “where the agency interpretation is contrary to the statutory (or, in this case, constitutional) language.”
 
 Mississippi State Tax Comm’n v. Moselle Fuel Co.,
 
 568 So.2d 720, 723 (Miss.1990).
 

 Both
 
 Muirhead
 
 and
 
 Moselle
 
 seem to eviscerate the “rule of practical construction” argument advanced by Exxon. The Court finds that in this state, and any other state, the highest court of the state is the final arbiter of the meaning of its constitution. The interpretation given to constitution by the Legislature, other state officials or any other agency.of the state government is not controlling upon the highest court of the state in its determination of the meaning of the constitution. Furthermore, the rule of practical construction argument is intimately linked to the rule of property argument. The Court has found that
 
 Dantzler
 
 did not create a rule of property which would give vested property rights to Exxon in the subject leases for a longer period than section 211 of the constitution allows. Likewise, the rule of practical construction asserted by Exxon is simply not relevant when the highest court in the state has, at least, clearly foreshadowed how it will rule on a given issue if presented with the opportunity, and at most, issued such a ruling. As stated previously, this Court is bound by the
 
 Chevron
 
 decision and will not circumvent that decision by finding that Exxon has vested property rights in the subject leases.
 

 F.
 
 The Taking and Due Process Claims
 

 “No person shall ... be deprived of life, liberty or property, without due process; nor shall private property be taken for public use, without just compensation.” U.S. Const. amend. V. By definition, this amendment applies only if a person has a vested property interest which may be taken. Because the Court has found that Exxon has no vested property interest in the subject leases, except for an interest for twenty-five years from the date of execution of the various leases, there can be no taking without just compensation or violation of due process. Because the Court finds that no taking has occurred, the Court need not address the issue of whether a state court judgment can effect a taking under federal law.
 

 Exxon also argues that a taking has occurred under the Mississippi Constitution which provides in Article III, § 17 that “[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law....” Again, because the Court has found that Exxon no longer has a property interest in any of the subject leases, there can be no taking or due process violation which breaches this section of the Mississippi Constitution.
 

 G.
 
 The State Contracts Clause
 

 Article III, § 16 of the Mississippi Constitution provides that “[e]x post facto laws, or laws impairing the obligation of contracts, shall not be passed.” Exxon argues that a holding declaring that the subject leases are invalid would be an impairment of contract in violation of Article III, § 16 of the Mississippi Constitution. As support for this argument, Exxon relies on the holding from
 
 Wisconsin Lumber Co. v. State,
 
 97 Miss. 571, 54 So. 247 (1911):
 

 If a contract when made was valid by the laws of the state as then expounded and administered in.its courts of justice, “its validity and obligation cannot be impaired by any subsequent action of legislation,
 
 or decision of its courts altering the construction of the law."
 

 Id.,
 
 54 So. at 249-250 (citing
 
 Hall v. Wells,
 
 54 Miss. 289, 301 (1877)).
 

 This argument fails for the same reason the other arguments advanced by Exxon fail. The decision in
 
 Chevron
 
 did not alter the state of the law in Mississippi regarding the leasing of oil, gas and mineral rights on sixteenth section land. The
 
 Chevron
 
 decision was clearly foreshadowed by
 
 Dantzler, Robertson
 
 and
 
 Pace.
 
 Thus, Exxon cannot rely upon the assertion that
 
 Dantzler
 
 created a rule of property that the word “lands” in section 211 does not include oil and gas.
 
 See
 
 Exxon’s Summary Judgment Memorandum at 54. That assertion is simply not supported by the holding in
 
 Dantzler
 
 itself, and certainly not by the later decisions of
 
 Robertson
 
 and
 
 Pace.
 
 While the word “lands” as used in section 211 does not include oil and
 
 *495
 
 gas for the purpose of the sale of those rights, section 211 does place a limit on the time during which such minerals can be removed. Thus, the argument that declaring these leases invalid is somehow an impairment of contract under the Mississippi Constitution cannot be sustained. The Court finds that the leases are invalid, and have been since the twenty-fifth anniversary of their inception, and that declaring them invalid does not impair the contractual rights of Exxon.
 

 H.
 
 Estoppel and Laches
 

 This Court entered an Amended Scheduling Order on February 4, 1993, bifurcating the issues in this case. The Court determined at that time that the validity of the leases in question should be determined before any other issues are addressed. In reliance upon that Order, the Court, on October 8,1993, denied the Defendants’ Objection to the Ruling of the Magistrate Judge regarding the denial of a Motion to Compel filed by the Defendants to obtain certain title opinions regarding the subject leases. In his opinion, the Magistrate Judge granted the Defendants leave to reapply to the Court after the current summary judgment motions have been decided. The Court finds that the material requested in the discovery motions may have some bearing on the issue of estop-pel and/or laches. For this reason, and because the parties did not fully brief the Court on these two issues, the Court will not consider these issues at this time. Furthermore, the Court notes that both parties only requested the Court to decide the validity of the subject leases and to consider all other issues at a later time.
 

 IV.
 
 Conclusion
 

 For the reasons set forth in this Memorandum Opinion and Order, the Court finds that the leases which are the subject of this action expired twenty-five years from the date of their execution. The Court further finds that Exxon should have the opportunity, pending the final outcome in this action, to renegotiate the leases, subject-to an accounting for production, pursuant to Miss.Code Ann. § 29-3-63 (Supp.1993). The Court expresses no opinion on which party will ultimately prevail in this case because the issues of estoppel and laches have yet to be considered by the Court.
 

 IT IS THEREFORE ORDERED that the Motion for Summary Judgment of the Joint Defendants is hereby granted.
 

 IT IS FURTHER ORDERED that the Motion for Summary Judgment or in the Alternative to Dismiss of the Natchez-Adams Defendants is hereby granted.
 

 IT IS FURTHER ORDERED that the Motion of Exxon for Partial Summary Judgment Against All Defendants is hereby denied.
 

 SO ORDERED.
 

 [1]
 

 . Prior to 1943, the State of Mississippi, as trustee, was vested with legal title to all 16th section and lieu lands (lands not part of a 16th section but as to which 16th section law is applicable) included in the Choctaw Purchase in the State of Mississippi.
 

 [2]
 

 . Section 6600 authorized the boards of supervisors, with the approval of the county superintendent of education, to execute oil, gas and mineral leases on 16th section and lieu lands for a primary term of no "more than six years and so long thereafter as oil, gas or other minerals is being produced from said lands.... ” Miss.Code Ann. § 6600 (1942). The "primary term" is the initial term for which such leases could be executed. The leases would expire at the end of the primary term if the lessee was not engaged in production 'of oil, gas or other minerals from the leased lands.
 

 [3]
 

 . Exxon assigned a certain leasehold interest to Pruet & Hughes Company, a partnership, by instrument dated July 22, 1976. This assignment is irrelevant to the present motions before the Court.
 

 [4]
 

 . Humble/Exxon assigned certain rights in this lease under “Farmout Agreements” with overriding royalty interests reserved. Exxon owned, as the successor of Humble, overriding royalty interests in the acreage covered by this lease until its expiration.
 

 [5]
 

 . Humble assigned this lease to T.A. Manhart on September 12, 1968, reserving a 1/24 overriding royalty interest. Exxon succeeded to this interest and continued to hold it until the expiration of the lease.
 

 [6]
 

 . Section 211 has been amended five times, in 1942, 1944, 1961, 1986 and 1992. During the time when the leases which are the subject of this case were executed, 1943-1960, section 211 was amended only once in 1944, to provide that 16th section lands situated in municipalities of the state could be leased for a term not exceeding 99 years. The relevant portion of section 211 stated that "the legislature may provide for the lease of any of said lands for a term not exceed
 
 *486
 
 ing twenty-five years for a ground rental, payable annually...." Miss. Const. art. 8, § 211.
 

 After the
 
 Chevron
 
 decision, the people of the State of Mississippi voted to amend § 211 so that oil and gas leases on sixteenth section lands may now be executed on a commercial equivalent with such leases of private lands: "the Legislature may provide, by general law, for leases on liquid, solid or gaseous minerals with terms coextensive with the operations to produce such minerals.” Miss. Const. art. 8, § 211 (1992). The Mississippi Legislature has responded to this constitutional amendment by providing that oil, gas and mineral leases may be executed for a primary term of five years and that such leases may continue "so long thereafter as oil, gas or other minerals are being produced and mined from said lands...." Miss.Code Ann. § 29-3-99 (Supp.1993).
 

 [7]
 

 .
 
 Pace
 
 was decided before any of the subject leases in this action were executed.
 

 [8]
 

 . The text of the Act is codified at 28 U.S.C. § 2201.
 

 [9]
 

 . The statute was amended once again in 1992 to coincide with the amendment of § 211 of the Mississippi Constitution.
 

 [10]
 

 . As noted previously, § 211 of the Mississippi Constitution no longer prohibits oil, gas and mineral leases for a period longer than twenty-five years.
 
 See supra
 
 note, 6.
 

 [11]
 

 . The opinions in
 
 Hall
 
 were delivered seriatim or separately. The Court is not completely sure of the precedential value to be accorded each opinion but will treat them all equally for the purpose of this opinion.
 

 [12]
 

 . Exxon argues that even though the justices on the
 
 Hall
 
 court delivered separate opinions, they all agreed that
 
 Stewart
 
 could not be applied retroactively in the
 
 Hall
 
 case because the practical construction of the constitutional provision in question controlled.
 
 See
 
 Exxon’s Summary Judgment Memorandum at 32. The Court does not agree with this reading of the case. The opinion of Justice Campbell states that
 
 Stewart
 
 and cases following it should not be adopted and followed. Justice Chalmers noted that the language in the statute was "universally treated" as bearing a certain construction until the pronouncement in
 
 Stewart.
 
 In any case, even accepting the language of Justice Simrall at face value, the rule of practical construction fails with regard to this issue for the reasons stated,
 
 supra
 
 at 492-493.